## HALLENBECK, RECEIVER, *v.* LEIMERT, RECEIVER.

No. 600. Argued April 5, 1935.—Decided April 29, 1935.

*Messrs. Russell F. Locke* and *George P. Barse,* with whom *Messrs. Raymond M. Ashcraft* and *F. G. Awalt* were on the brief, for petitioner.

*Mr. Daniel M. Healy* for respondent.

118

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

Respondent, receiver of Central Bank, brought suit against petitioner, receiver of Ashland Bank, in the District Court, Northern District of Illinois, to recover upon five checks drawn upon the former ánd endorsed by the latter bank. Jury having been waived, the trial court made findings of fact with conclusions of law and entered judgment in favor of respondent here for the sum demanded. There is no bill of exceptions; the findings control.

From these it appears—

All the banks spoken of herein were located in Chicago. James G. Hodgkinson was vice-president and director of Ashland Bank; also vice-president of Hodgkinson & Durfee, Inc., which had a deposit account with Central Bank. Against this account he drew the corporation's five checks, and delivered them to Ashland Bank. It endorsed and deposited four of them with Federal Reserve Bank for collection, Saturday, April 23rd. The fifth check duly endorsed went for collection to the First National Bank.

The Federal Reserve and First National Banks were regular members of the Chicago Clearing House Association; Central Bank an affiliate; Ashland Bank was neither member nor affiliate. A rule of the Chicago Clearing House provided—

"In order that the member banks presenting such items may have an opportunity to give special instructions as to the protest of unpaid items, that notice of non-payment of any such items drawn on banks . . . which are . . . affiliated with members of the association . . . and which have their places of business located . . . on 12th Street or south thereof, be given by telephone before two-thirty o'clock (2:30) p.m. of the same day to the member banks presenting such items through the Clearing House . . ."

Early Monday morning, April 25th, The Federal Reserve Bank turned in the four deposited checks to the Chicago Clearing House. According to the rules and practices, Central Bank settled the indicated adverse balance at the Clearing House and before 11:30 a. m. received the checks. Several hours later it learned that Hodgkinson & Durfee lacked funds to meet them.

On the same day First National Bank, which carried accounts with both Central and Ashland Banks, charged the check received from the latter against the former's account, and sent it by messenger to the drawee's place of business, where it was received and retained.

When the Central Bank ascertained the status of Hodgkinson & Durfee's account, it notified Hodgkinson. At 9:30 a. m. the following morning, April 26th, the five checks were returned to Ashland Bank for reimbursement. This was refused. No notice was given by Central Bank to either Federal Reserve or First National Bank. They "got the money from the Central Bank and in turn gave the money to the Ashland Bank."

The trial court concluded the checks were not unconditionally paid; also that the notice to Ashland Bank on

April 25th under § 102, Negotiable Instruments Law; Par. 124, Cahill's Ill. R. S., sufficed to fix responsibility. Accordingly judgment went against petitioner.

The Circuit Court of Appeals affirmed, and among other things, said—

"It is conceded by both parties that, if payment were actually made by the bank on which the checks were drawn (in this case the Central Bank) or if, instead of actual payment, an unconditional credit had been given, then, though it were later discovered that there were insufficient funds on deposit in the account of the maker to cover the checks, the payment would be absolute and irrevocable. . . . The method of transacting business followed by the Clearing House Association contemplates that the members will immediately examine the various items which go to make up the balance and only the subsequent lapse of time without electing to dishonor the check causes the settlement to become final. In the case of members of the Clearing House, the time within which notice must be given is fixed by agreement. In the case of banks not members of the Clearing House, the provisions of the Negotiable Instruments Law must govern as to what length of time may elapse before the tentative payment becomes final and irrevocable. . . . The Ashland Bank was not a member of, or affiliated with, the Clearing House Association, and is vested with no rights based upon its rules. . . . The Central Bank having elected to recover from the Ashland Bank directly, all that was necessary to bring the giving of notice of dishonor within the provisions of the Negotiable Instruments Law was that notice be given 'before the close of business hours on the day following.' "

And it cited Cahill's Ill. Stat., 1933, c. 98, par. 124 (§ 102, Negotiable Instruments Law) which provides:

"Where the person giving and the person to receive notice reside in the same place, notice must be given within the following times:

" 1. If given at the place of business of the person to receive notice, it must be given before the close of business hours on the day following."

We think the conduct of Central Bank constituted final irrevocable payment of the five checks, as if cash had passed over the counter. And if this be correct, counsel do not maintain that the judgment below can be sustained.

Settlement at the Clearing House, in respect of the four checks turned in by the Federal Reserve Bank, was at first provisional, subject to be withdrawn or corrected upon notice given before 2: 30 o'clock. After this provisional settlement the drawee accepted delivery of the checks and gave no notice of dishonor prior to two-thirty o'clock. The time having expired, payment became absolute. The fifth check, presented by the First National Bank, after being charged to the drawee's account, was not dishonored, but upon presentation was accepted without reservation. Payment then became complete and irrevocable. Central Bank did not repudiate or question the charge against its account at the First National Bank. On the contrary this was ratified. See *National Bank* v. *Burkhardt,* 100 U. S. 686, 689; *American Nat. Bank* v. *Miller,* 229 U. S. 517, 520. Both collecting banks transmitted the proceeds received to Ashland Bank.

Apparently the argument in support of the judgment below is this—

The checks in the hands of the collecting banks were payable to bearer, and held in due course. The drawee bank did not in fact pay the checks, but after becoming holder, dishonored them. Thereafter, within the time prescribed by § 102, Negotiable Instruments Law, it gave notice to the first endorser and thus fixed the obligation to pay. Admitted payment to the collecting bank is excused upon the theory that this resulted from rules of the Clearing House, not applicable to Ashland Bank, a non-member.

Since payment was actually made to the collecting bank, and never repudiated, it seems impossible to conclude that the secondary liability assumed by endorsers remained in force. As the checks were not dishonored when presented, the endorser could only have been advised that when paid the drawee lacked funds to meet them.

The Ashland Bank is not seeking to enforce rules of the Clearing House. It asks that proper effect be given to actual payment made through compliance with those rules. The duty of the drawee bank was either to pay or refuse to pay when the holder presented and demanded final payment of the checks. It paid them. The tentative payments became final—as much so as if money had passed. No objection is made to the Clearing House rules and we find none.

Section 102 of the Negotiable Instruments Law refers to notice of dishonor, not to the time within which a dishonored check may be returned, nor to advice concerning an overdraft. It does not relate to tentative payments and is without application in circumstances like those here disclosed. At least that seems clear to us and there is no holding to the contrary by the courts of Illinois.

The record reveals no attempt to recover because of fraud, mutual mistake, or other similar circumstance.

The questioned judgment must be reversed. One will be entered here for the petitioner.

*Reversed.*