**Karen HEIN, Individually and on behalf of all other persons similarly situated, Plaintiff,**

v.

**Kevin J. BURNS, Individually and in his capacity as Commissioner of Social Services, et al., Defendants.**

**Civ. No. 73-240-1.**

United States District Court,
S. D. Iowa, C. D.

March 4, 1974.

Robert D. Bartels, Barry A. Lindahl, Iowa City, Iowa, for plaintiff.

Lorna L. Williams, Sp. Asst. Atty. Gen., Thomas R. Hronek, Asst. Atty. Gen., State of Iowa, for defendants.

Before STEPHENSON, Circuit Judge, HANSON, Chief District Judge, and STUART, District Judge.

## MEMORANDUM AND RULING

STUART, District Judge.

This matter came on for hearing before this three-judge Court on the 24th day of January, 1973, on plaintiffs' motion for preliminary injunction. By agreement of the parties, the hearing on the ultimate merits of plaintiffs' claim was consolidated with the preliminary hearing. This Court was convened pursuant to 28 U.S.C. §§ 2281 and 2284 because plaintiffs are challenging a regulation of state-wide applicability promulgated by "an administrative board or commission acting under State statutes" and because several of the arguments raised by plaintiffs are of substantial constitutional import. Upon hearing the arguments of the parties and considering the documentary evidence and briefs filed herein, the Court makes the following findings of fact and conclusions of law.

## I. Findings of Fact.

The named plaintiff, Karen Hein, is a divorced mother of two minor children residing in Muscatine, Iowa. Except for a short period, the duration and cause of which are not relevant herein, she has, at all times material, been eligible for and in receipt of food-stamp assistance made available pursuant to the Food Stamp Act of 1964, as amended, 7 U.S.C. § 2011 et seq.; and Iowa Code §§ 234.6, 234.11. In addition to her food stamp assistance, Mrs. Hein is participating in an Individual Education and Training Plan under the auspices of which she has been receiving training as a nurse at St. Luke's School of Nursing in Davenport, Iowa. To help defray the cost of commuting from Muscatine to Davenport, Mrs. Hein receives a travel allowance of $44 per month, all of which is spent for travel. Pursuant to the Iowa State Department of Social Services Employees' Manual § VII, ch. 3, p. 13, Item j [hereinafter Item j], this travel allowance is included as an item of income for determining "Monthly Net Income" for food stamp assistance purposes. Iowa State Department of Social Services Employees' Manual § VII, ch. 3, p. 16, Item d [hereinafter Item d], however, specifically denies the travel allowance deduction status in determining "Adjusted Net Income". Since it is this latter figure which directly determines the amount an individual must pay for his allotment of

food stamps, plaintiff and the other members of the class she represents [1] have to pay more for food stamp aid because they are receiving their travel allowances, even though the allowances are spent entirely to defray commuting expenses and have no effect on their food purchasing power. The members of the class are thus placed in the unenviable position of being forced to choose between foregoing participation in a training program or attempting to stretch already meager resources a bit further in an attempt to obtain adequate nutrition.

## II. Conclusions of Law.

Plaintiffs raise both statutory and constitutional challenges to the regulatory scheme which places them in this quandry. They claim, first, that the Iowa regulations are inconsistent with the Food Stamp Act and the regulations promulgated pursuant thereto by the Food and Nutrition Service of the Department of Agriculture. 7 C.F.R. §§ 270.1–271.9. In addition, however, plaintiffs also claim the Iowa scheme violates the due process clauses of the 5th and 14th amendments by creating a conclusive presumption which is seldom, if ever, borne out by reality, namely, that recipients of travel allowances have more money with which to purchase food because of their receipt of such allowances. *See* United States Department of Agriculture v. Murry (1973), 413 U.S. 508, 514, 93 S.Ct. 2832, 37 L.Ed.2d 767; Vlandis v. Kline (1973), 412 U.S. 441, 452, 93 S.Ct. 2230, 37 L.Ed. 2d 63; Stanley v. Illinois (1972), 405 U. S. 645, 656–657, 92 S.Ct. 1208, 31 L.Ed. 2d 551. Additionally, plaintiffs raise equal protection objections to the scheme, suggesting that it creates an arbitrary distinction between recipients of travel allowances and other food stamp recipients which is unrelated to any legitimate governmental interest. *See* United States Department of Agriculture v.

Moreno (1973), 413 U.S. 528, 533–538, 93 S.Ct. 2821, 37 L.Ed.2d 782.

Despite plaintiffs' able briefing and argument of the constitutional questions, the Court has concluded that the issues before it may be resolved on a purely statutory basis. Mindful, therefore, of the admonition that constitutional questions should not be needlessly decided, the Court declines to express any opinion about the constitutionality of the state regulatory scheme.

■ Proceeding to the claim that Iowa's method of computing the amount certain households must pay for food stamps is inconsistent with the federal statute and regulations, the Court notes, as a general precept, that the Food Stamp Act of 1964 and the regulations appurtenant thereto are remedial in nature and entitled to broad, generous interpretation. To treat the Act and regulations otherwise would be "to abuse the interpretative process and to frustrate the announced will of the people". A. H. Phillips, Inc. v. Walling (1945), 324 U. S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095.

Thus, when Congress expressly declares:

> It is hereby declared to be the policy of Congress, in order to promote the general welfare, that the Nation's abundance of food should be utilized * * * to safeguard the health and well-being of the Nation's population and raise levels of nutrition among low-income households. The Congress hereby finds that the limited food-purchasing power of low-income households contributes to hunger and malnutrition among members of such households. The Congress further finds that increased utilization of food in establishing and maintaining adequate national levels of nutrition will promote the distribution in a beneficial

---

[1] Plaintiffs have proposed that the class be defined so as to include all persons receiving transportation allowances pursuant to Individual Education and Training plans whose allowances are included as income in deter-

mining the price they must pay for their allotted food stamps but whose allowances are denied deductability by virtue of Item *d.* Defendants do not quarrel with this definition, and the Court hereby adopts it.

manner of our agricultural abundances and will strengthen our agricultural economy, as well as result in more orderly marketing and distribution of food * * *. Food Stamp Act of 1964, § 2, 7 U.S.C. § 2011.

this Court must liberally construe those words and view with disfavor any regulation which neither promotes adequate nutrition among low-income households nor benefits our agricultural economy.

This is precisely the situation we are faced with in determining the validity of Item *d*. By denying recipients of travel allowances a deduction from "Monthly Net Income" for such allowances, the Department of Social Services, in effect, encourages the continuance of the very situation the food stamp program was created to alleviate. Since the travel allowances must be spent entirely to defray commuting expenses, receipt of such allowances has no effect on food purchasing power. Yet under the Iowa formula for computing food stamp cost, the travel allowance operates to increase the amount an affected household must pay to purchase a given quantity of food. This is amply illustrated by the case of the named plaintiff. Without her $44 monthly travel allowance Mrs. Hein would have to pay $46 each month to obtain food stamps with a purchasing power of $94. Plaintiffs' Exhibit 1. With her travel allowance treated as it presently is under the Iowa scheme, she has to pay $58 each month for the same $94 worth of stamps.

In defense of this method of computing food stamp cost, the defendants point to 7 C.F.R. § 271.3(c)(1)(iii)(e), which provides, in part:

(iii) Deductions for the following household expenses shall be made:

\* \* \* \* \* \*

(e) Educational expenses which are for tuition and mandatory school fees, including such expenses which are covered by scholarships, educational

grants, loans, fellowships, and veterans' educational benefits.

Defendants interpret this regulation to limit deductions for educational expenses solely to expenses for tuition and mandatory fees. In effect, defendants would have the Court rewrite the regulation as follows:

(e) Educational expenses which are for tuition and mandatory school fees, including *such expenses* [tuition and mandatory school fees] which are covered by scholarships, educational grants, loans, fellowships, and veterans' benefits. Defendants' Memorandum Brief in Support of Motion to Dismiss and Motion for Summary Judgment, at 5. [Emphasis and parenthetical material in original.]

So interpreted, defendants argue, the regulation leaves no room for deduction of travel allowances, notwithstanding the fact that such allowances are made available to the plaintiffs by educational grants. Thus, defendants conclude, the provision in the Employees' Manual denying deductions for travel allowances is nothing more than state effectuation of the Department of Agriculture's own regulation. Accordingly, if the federal regulation is valid, the state regulation, too, must be upheld.[2]

■ The Court need not consider the validity of the federal regulation in order to invalidate the state's, however, for we feel that the defendants read § 271.3(c)(1)(iii)(e) too narrowly. In view of the congressional declaration of policy quoted above and echoed by the Department of Agriculture in 7 C.F.R. § 270.1, a more reasonable interpretation of subsection (e), and the one adopted by this Court, is that the phrase "such expenses" refers not to "tuition and mandatory school fees", but to the general classification "educational expenses". So construed, the subsection may be read as allowing deduction of educational expenses includ-

2. At oral argument counsel for the defendants went even further, claiming that since the Department of Agriculture had approved the Employees' Manual, the provision denying deductability was not only consonant with, but mandated by, the Department's interpretation of the Food Stamp Act. Counsel has since retreated from this position and it is no longer seriously pressed.

ing educational expenses which are covered by scholarships, educational grants, etc. This reading is far more nearly in accord with the purposes of the food stamp program in that it allows a deduction for an item of income, the travel allowance, which has no effect on food purchasing power. Accordingly, the Court is of the opinion that it is against this broader reading of subsection (e) that Item *d* must be judged.

■ Since the parties agree that the travel allowances are provided by educational grants, the Court concludes, on the basis of the above analysis, that Item *d* is inconsistent with, and thus invalidated by, subsection (e). Therefore, the Court holds that defendants should be enjoined from denying deductability for travel allowances forthwith.

Having determined that plaintiffs' claim is meritorious, there remain but two items to dispose of. Pursuant to defendants' contention that the Department of Agriculture was an indispensible party to this action, plaintiffs attempted to join it. That attempt was faulty, however, and the Department has resisted it. Since our decision does not involve a determination of the validity of any actions taken by the Department or any of its employees, neither the Secretary of Agriculture nor the Department need be a party herein, and the Department's motion to dismiss as to it should be granted.

Finally, the Court notes that plaintiffs' complaint includes a prayer for damages. The issue of damages was not discussed at oral argument or in the briefs of any of the parties, however, and no evidence has been introduced which would enable the Court to do anything but surmise the proper measure of a monetary award, should such an award be proper. Since plaintiffs' failure to address this issue raises some doubt about whether they seriously press the claim for monetary relief for the named plaintiff or the class

she represents, the Court is of the opinion that the plaintiffs should be given two weeks from the date this order is signed in which to give the Court some indication of the status of their damage claim. In the event that plaintiffs do not respond within said period, the Court will consider the matter of damages closed and apply injunctive relief prospectively only.

We therefore conclude that defendants, their successors in office, their agents and employees, and all other persons in active concert and participation with them should be permanently enjoined from including in the "Monthly Net Income" of any person receiving same, any amount received by such person as reimbursement for necessary commuting expenses pursuant to an Individual Education and Training Plan, unless such amount is deducted from such person's Monthly Net Income in determining such person's Adjusted Net Income. We conclude further that defendants should promptly recompute the adjusted net income for each person who is presently participating in the food stamp program and who has been paying a wrongfully high price for his food stamp allotment because his adjusted net income has been improperly computed in the particulars set forth above, and charge such person the lesser amount figured in compliance herewith for the next purchase of food stamps and each subsequent purchase thereof so long as such person receives such a reimbursement for necessary commuting expenses.

Finally, all motions still pending whereby plaintiffs have attemped to add either the Department of Agriculture or the Secretary of Agriculture or both as parties to this action shall be and the same hereby are denied.

The costs of this action shall be and hereby are taxed to defendants.

An appropriate Order will issue forthwith.