KNEBEL, SECRETARY OF AGRICULTURE *v.* HEIN

No. 75–1261.   Argued November 29, 1976—Decided January 11, 1977*

*Stephen L. Urbanczyk* argued the cause *pro hac vice* for appellant in No. 75–1261.  With him on the briefs were

---

*Together with No. 75–1355, *Burns, Comm'r, Dept. of Social Services of Iowa, et al.* v. *Hein,* also on appeal from the same court.

*Solicitor General Bork, Assistant Attorney General Lee, Deputy Solicitor General Jones,* and *William Kanter. Lorna Lawhead Williams,* Special Assistant Attorney General of Iowa, argued the cause for appellants in No. 75–1355. With her on the briefs was *Richard C. Turner,* Attorney General.

*Robert Bartels,* by appointment of the Court, 426 U. S. 945, argued the cause and filed a brief for appellees in both cases.†

MR. JUSTICE STEVENS delivered the opinion of the Court.

Under the program administered by the Secretary of Agriculture and cooperating state agencies pursuant to the Food Stamp Act of 1964, 78 Stat. 703, 7 U. S. C. § 2011 *et seq.* (1970 ed. and Supp. V), certain low-income households are entitled to purchase food coupons at a discount. The price an eligible household must pay for food stamps is determined, in part, by its "income" as defined in the applicable federal and state regulations. Under those regulations a transportation allowance, which appellee receives from the State of Iowa and uses to defray the cost of commuting to a nurses' training program, is treated as "income." The questions presented on this appeal are whether those regulations are authorized by the statute and, if so, whether they are constitutional.

Appellee Hein, a divorced woman with custody of two children, is the head of a household receiving assistance.[1] Prior to September 1972, she paid only $46 for food stamps with a retail value of $92. Thereafter she received a grant from the State which paid her tuition at a nurses' training

---

†*Ralph Santiago Abascal, Lorelei Joy Borland,* and *Ronald F. Pollack* filed a brief for Sandra Chek et al. as *amici curiae* in both cases.

[1] It was stipulated that prior to November 28, 1973, Ms. Hein had no savings and only the following elements of income:

"a. $28.75 a month rent from a house in which she owns a part interest;

"b. $220 ADC;

"c. $44 Work and Training Allowance; and

"d. $36 food stamp bonus." App. 24–25.

school, plus a transportation allowance of $44 per month.[2] The actual monthly expense of commuting between her residence in Muscatine, Iowa, and the school in Davenport amounted to at least $44.[3] The allowance nevertheless increased the "income" which determined the price of her food stamps,[4] resulting in a $12 price increase.

After exhausting state administrative remedies, appellee filed a class action in the United States District Court for the Southern District of Iowa seeking to enjoin the enforcement of the Iowa regulations requiring that transportation allowances be included in income. Because the constitutionality of the regulations was challenged, a three-judge court was convened pursuant to 28 U. S. C. § 2281.[5] The District

---

[2] This assistance was granted under the Iowa Work and Training Program, authorized by Iowa Code Ann. §§ 249C.1, et seq. (Supp. 1976). The program is partially funded by the State and partially by the Federal Government. Such funding is now provided under Title XX of the Social Security Act, 42 U. S. C. § 1397a et seq. (1970 ed., Supp. V).

[3] The record is actually somewhat unclear on this point. However, the District Court construed a stipulation regarding appellee's "allowance for necessary commuting" as indicating that she actually was required to spend that amount. For purposes of decision, we accept the District Court's construction. It should be noted, however, that if appellee was a full-time student, she would receive the full $44 even if her actual expenses were less. If she was a part-time student, she would be reimbursed on the basis of mileage, up to a maximum of $44 per month. The record does not disclose whether she was a full-time or part-time student.

[4] Under the regulations the tuition payment and the transportation allowance were both added to income. Then, an amount equal to the full tuition cost, plus 10% of the tuition payment and 10% of the transportation allowance, was deducted from income. The record does not disclose the tuition cost, or whether the proper deduction of 10% of that amount was made.

[5] The District Court defined the class represented by appellee to include all persons receiving transportation allowances pursuant to individual education and training plans whose allowances were included in, and not deducted from, income for purposes of determining the price they had to pay for food stamps. 371 F. Supp. 1091, 1093 n. 1 (1974).

Court originally held the Iowa regulation invalid as inconsistent with the regulations of the Secretary of Agriculture.[6] 371 F. Supp. 1091 (1974). While the State's appeal was pending in this Court, the Secretary promulgated a clarifying amendment eliminating the basis for the District Court's holding.[7] We therefore vacated the original judgment, 419 U. S. 989.

On remand, the Secretary of Agriculture was joined as an additional defendant. The District Court then held both the state and the federal regulations invalid. 402 F. Supp. 398 (1975). The court could identify no rational basis for treating as income a training allowance which is fully expended for its intended purpose. Consequently, the court reasoned, the regulation did not implement the statutory objective of providing adequate nutrition for low-income families. Since the allowance did not increase appellee's "food purchasing power," the District Court felt that it was totally irrational for the allowance to increase the cost of appellee's food stamps. This analysis led to the conclusion that the regulation conflicted with the Food Stamp Act and discriminated against recipients of transportation allowances in violation of the equal protection guarantee explicit in the Fourteenth Amendment and implicit in the Due Process Clause of the Fifth Amendment.[8]

---

[6] Under 7 U. S. C. § 2014, state "plans of operation" submitted to the Secretary are not to be approved "unless the standards of eligibility meet those established by the Secretary." The Secretary's regulations set out the standards of eligibility which must be applied by the state agency. 7 CFR § 271.3 (c) (1976). The validity of the state regulations is at issue because they formed the direct basis for the change in appellee's food stamp price; the federal regulations are challenged because they now authorize the state regulations. See n. 7, *infra*.

[7] The clarifying amendment specifically precluded "deductions . . . for any other educational expenses such as . . . transportation." 7 CFR § 271.3 (c) (1) (iii) (f) (1976).

[8] The District Court ordered the defendants to cease including in income "any amount received . . . as reimbursement for necessary com-

We are persuaded that the statute authorized the Secretary and the State of Iowa to issue the challenged regulations and that the regulations are constitutional.

The salutary purpose and the broad outlines of the federal food stamp program are well known.[9] The Food Stamp Act authorizes the Secretary to "formulate and administer a food stamp program" which will provide an eligible household "an opportunity to obtain a ñutritionally adequate diet," 7 U. S. C. § 2013 (a). He is to "prescribe the amounts of household income and other financial resources, including both liquid and nonliquid assets, to be used as criteria of eligibility," 7 U. S. C. § 2014 (b) (1970 ed., Supp. V). The charge for the coupons is to "represent a reasonable investment on the part of the household, but in no event more than 30 per centum of the household's income . . . ." § 2016 (b). Finally, the Secretary "shall issue such regulations, not inconsistent with this chapter, as he deems necessary or appropriate for the effective and efficient administration of the food stamp program." § 2013 (c).

---

muting expenses, pursuant to an Individual Education and Training Plan, unless such amount is deducted from such person's monthly net income in determining such person's adjusted net income." 402 F. Supp. 398, 408 (1975). The court also ordered defendants to recompute the amounts which members of the class should have paid for food stamps and to allow them a credit against future purchases in the amount of the past overcharge.

[9] "The federal food stamp program was established in 1964 in an effort to alleviate hunger and malnutrition among the more needy segments of our society. 7 U. S. C. § 2011. Eligibility for participation in the program is determined on a household rather than an individual basis. 7 CFR § 271.3 (a). An eligible household purchases sufficient food stamps to provide that household with a nutritionally adequate diet. The household pays for the stamps at a reduced rate based upon its size and cumulative income. The food stamps are then used to purchase food at retail stores, and the Government redeems the stamps at face value, thereby paying the difference between the actual cost of the food and the amount paid by the household for the stamps. See 7 U. S. C. §§ 2013 (a), 2016, 2025 (a)." *United States Dept. of Agriculture* v. *Moreno,* 413 U. S. 528, 529–530.

Under the statute's broad delegation of authority, the Secretary might have defined income in a variety of ways. He might, for example, have treated wages differently from training allowances. He decided, however, to adopt a definition of income which includes wages, welfare payments, training allowances, and most other monetary receipts.[10] Only a few specific deductions are allowed.[11] These deductions

---

[10] The regulation provides, in part, that income includes:

"(a) All compensation for services performed as an employee . . . ."

"(f) Payments received from federally aided public assistance programs, general assistance programs, or other assistance programs based on need;

"(g) Payments received from Government-sponsored programs such as . . . the Work Incentive Program, or Manpower Training Program . . . ."

"(i) Cash gifts or awards . . . for support, maintenance, or the expenses of education . . . ."

"(l) Rents, dividends, interest, royalties, and all other payments from any source whatever which may be construed to be a gain or benefit . . . ." 7 CFR § 271.3 (c)(1)(i) (1976).

[11] The deductions which are relevant for present purposes are these:

"(a) Ten per centum of income from compensation for services performed as an employee or training allowance not to exceed $30 per household per month. This deduction shall be made before the following deductions . . . ."

"(d) The payments necessary for the care of a child or other persons when necessary for a household member to accept or continue employment, or training or education which is preparatory for employment . . . ."

"(f) Tuition and mandatory fees assessed by educational institutions (no deductions shall be made for any other education expenses such as, but not limited to, the expense of books, school supplies, meals at school, and transportation)." 7 CFR § 271.3 (c)(1)(iii) (1976).

These regulations have undergone change during the course of this litigation. The express exclusion of transportation expenses as a possible educational deduction was added in response to the District Court's holding at a prior stage of the litigation that such a deduction was required by the regulations. See supra, at 290–291. More recently, the system of itemized deductions set forth in the text was replaced by a standardized deduction for all households. 41 Fed. Reg. 18788 (1976). We are told that enforcement of the new regulations has been enjoined. Brief

do not include any itemized deduction for commuting expenses of either students or workers. Instead, there is a standardized deduction of 10% of the wages or training allowance (including tuition grants and travel allowances), which is intended to cover incidental expenses.[12]

The District Court was correct that the regulations operate somewhat unfairly in appellee's case. Nevertheless, we are satisfied that they are the product of a valid exercise of the Secretary's statutory authority. Perhaps it might have been more equitable to allow a deduction for all commuting expenses,[13] or for the expenses of commuting to a training program, or—as the order of the District Court provides—just for such expenses covered by state transportation allowances. But the availability of alternatives does not render the Secretary's choice invalid.[14] Moreover, a

---

for Appellant in No. 75–1261, p. 5 n. 3. This case would not become moot if the new regulations go into effect, because of the compensatory relief ordered by the District Court. See n. 8, *supra*.

[12] 7 CFR § 271.3 (c) (1) (iii) (*a*) (1976). A separate deduction is allowed for job- or training-related child-care expenses. 7 CFR § 271.3 (c) (1) (iii) (*d*) (1976).

[13] Deductions for such incidental expenses are allowed in calculating income from self-employment. See 7 CFR § 271.3 (c) (1) (i) (*b*) (1976). Appellee does not contend that the Secretary is required to take this approach with respect to wage earners. The statute before us, unlike that considered in *Shea* v. *Vialpando*, 416 U. S. 251, contains no indication that Congress meant to require individualized consideration of employment-related expenses. Given that the treatment of wage earners is valid, it follows that similar treatment of trainees is valid.

[14] The Court's recent comment on a regulatory choice made by the Federal Reserve Board in its administration of the Truth in Lending Act, 15 U. S. C. § 1601 *et seq.*, is relevant. In *Mourning* v. *Family Publications Serv., Inc.*, 411 U. S. 356, 371–372, the Court stated:

"That some other remedial provision might be preferable is irrelevant. We have consistently held that where reasonable minds may differ as to which of several remedial measures should be chosen, courts should defer to the informed experience and judgment of the agency to whom Congress delegated appropriate authority. *Northwestern Co.* v. *FPC*, 321

plainly acceptable reason exists for rejecting each of these possible alternatives.

Allowing a deduction for all transportation expenses would create significant administrative costs as well as risks of disparate treatment.[15] Disparate treatment of trainees and wage earners could be criticized as unfairly discriminating against the worker. Similar criticism can be leveled against the order entered by the District Court in this case, under which members of the class would fare better than workers with equally low receipts and equally high expenses.

The District Court's primary reason for invalidating the regulations was its view that transportation grants do not increase food purchasing power.[16] But the grant does give a household more food purchasing power than another household which receives no grant but incurs similar nondeductible

U. S. 119, 124 (1944); *National Broadcasting Co.* v. *United States,* 319 U. S. 190, 224 (1943); *American Telephone & Telegraph Co.* v. *United States,* 299 U. S. 232, 236 (1936)."

[15] The record includes a letter dated March 11, 1974, from the Deputy General Counsel of the Department of Agriculture explaining the reasoning underlying a portion of the regulations. He stated:

"When these regulations were originally under consideration, it was administratively determined that tuition and mandatory fees are readily determinable, are uniform for all students, and are the primary costs of education (particularly college education) over and above a student's ordinary costs of living. It was also determined that the administrative burden of determining and verifying the expenses for the infinite variety of other outlays which may be incurred for education would be undue. Further, these other expenses, because of personal preference or otherwise, vary greatly from person to person and thus from household to household."

The fact that the Internal Revenue Code does not allow a deduction from income for commuting expenses lends support to the view that there is some reasonable basis for the Secretary's judgment in formulating these regulations. See *Commissioner* v. *Flowers,* 326 U. S. 465.

[16] For some full-time students who are members of the class this reasoning rests on a faulty premise; for them, the grant may exceed actual transportation expenses.

expenses related to training or employment. Moreover, nothing in the statute requires that deductions include all necessary nonfood expenditures. On the contrary, the requirement in § 2016 (b) that the price of the food stamps shall not exceed 30% of the household's income, assumes that 70% of that income may be expended on nonfood necessities.[17] Thus, there is a built-in allowance for necessary expenses beyond the specific deductions.[18]

We conclude that the federal regulations defining income were reasonably adopted by the Secretary in the performance of his statutory duty to "formulate and administer a food stamp program" and are therefore within the Secretary's statutory authority. Since there is no question about the constitutionality of the statute itself, the implementation of the

---

[17] We are informed that the "average purchase requirement for a food stamp household is now 24 percent of net income," Jurisdictional Statement in No. 75–1261, pp. 10–11, n. 3. See also 7 CFR § 271.10, App. A (1976).

[18] The District Court also believed that an exclusion from income was required by what it perceived to be the Act's policy favoring education. This policy was thought to be embodied in 7 U. S. C. § 2014 (c), which exempts bona fide students from the requirement that able-bodied adults register for work as a prerequisite to receiving food stamps. 402 F. Supp., at 405. This section expresses, if anything, only a policy that students and trainees not be treated less favorably than workers. Allowing trainees an exclusion for travel allowances would give them *more* favorable treatment than wage earners, who do not get a deduction for commuting expenses.

It is also contended that the regulations at issue work at cross-purposes with Title XX of the Social Security Act, which provides funding for the state program under which the travel allowance was paid. This contention is true only in the sense that the net benefit of the travel allowance is reduced by the increase in food stamp prices. But this is equally true of other government benefits, such as AFDC, which appellee concedes are properly included in income. Brief for Appellee 23–24. We find no indication that Congress intended different treatment for training allowances. Cf. 42 U. S. C. § 4636; *Hamilton* v. *Butz,* 520 F. 2d 709 (CA9 1975).

statutory purpose provides a sufficient justification for both the federal regulations and the parallel state regulations to avoid any violation of equal protection guarantees. See, *e. g., Weinberger* v. *Salfi,* 422 U. S. 749, 768–770; *Mathews* v. *De Castro, ante,* at 185. Nor do the regulations embody any conclusive presumption. They merely represent two reasonable judgments: first, that recipients of state travel allowances should be treated like other trainees and like wage earners; and second, that the standard 10% deduction, coupled with the 30% ceiling on coupon purchase prices, provides an acceptable mechanism for dealing with ordinary expenses such as commuting. The Constitution requires no more. See *Salfi, supra,* at 771–777.

*Reversed.*