**430**

STATE OF LOUISIANA, through the DE-
PARTMENT OF HEALTH AND HU-
MAN SERVICES, Plaintiff-Appellant,

v.

John R. BLOCK, Secretary, United
States Department of Agriculture,
Defendant-Appellee.

No. 82–3218
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 27, 1982.

Dorothy J. Kyle, Staff Atty., Dept. of
Health and Human Services, Baton Rouge,
La., for plaintiff-appellant.

Shelly Zwick, Asst. U.S. Atty., Baton
Rouge, La., Susan Carlson, Federal Pro-
grams Branch, Robert S. Greenspan, Car-
lene V. McIntyre, Dept. of Justice, Civil
Division, Appellate Staff, Washington, D.C.,
for defendant-appellee.

Before GEE, RANDALL and TATE, Cir-
cuit Judges.

PER CURIAM:

This case arises out of the unrecovered
theft of some $138,832 worth of food
stamps from the New Orleans, Louisiana,
issuing office, and the basic question that
we are presented with is whether the loss
should be borne by the United States, which
had issued the stamps, or by the State of
Louisiana, which had been given the imme-
diate responsibility for their safekeeping
and distribution. We are required to decide
the question under the Food Stamp Act of
1964, as it stood before it was rewritten and

reorganized in 1977.[1] The district court ruled that Louisiana should bear the loss and, for the reasons set out below, we agree.

The facts are not in dispute, and may be found in the opinion of the court below. 531 F.Supp. 118, 119–20 (M.D.La.1982). The only issues on this appeal are nonfactual and concern the validity of the regulations that the Secretary of Agriculture has promulgated to administer the Food Stamp Act of 1964, 7 U.S.C. §§ 2011–2026 (1976) (superseded 1977). We are asked to decide, first, whether the Secretary could hold Louisiana strictly liable for the loss of stamps in its custody; second, whether the Secretary could establish a presumption that any unrecovered stolen stamps were actually redeemed, rather than simply discarded or left unused; and third, whether the Secretary could lawfully set off the $138,832 allegedly owed against Louisiana's letter of credit with the Department of the Treasury.

We think that the district court's resolution of all three issues is clearly correct, and see no point in restating it. We write here only to deal with those of Louisiana's arguments that appear not to have been directly addressed in the district court's opinion.

■ The district court held, first, that the Secretary's strict-liability regulation, 7 C.F.R. § 271.7(c) (1977) (superseded), was properly issued as a "necessary or appropriate" regulation under section 4(c) of the Act, 7 U.S.C. § 2013(c) (1976) (superseded). The court relied on the reasoning of the Fourth Circuit's opinion in *Hettleman v. Bergland,* 642 F.2d 63 (4th Cir.1981), which we, too, find persuasive. Louisiana's only unaddressed counterargument is conclusory and based on cases that are easily distinguished from the present one.[2] We therefore reject it.

■ Louisiana next argues that the district court erred in upholding that part of the same regulation, 7 C.F.R. § 271.7(c) (superseded), which imposes a presumption of redemption, i.e., a presumption that unrecovered stamps have actually been turned in and must be paid for by someone. The asserted unfairness of this regulation—according to the stipulated facts—arises out of the apparent impossibility of rebutting the presumption. Again, we cannot find fault with the district court's analysis. On this appeal, Louisiana has done nothing more than assert that the regulation is unfair and cannot stand. This is not enough.

1. The Food Stamp Act of 1977, 7 U.S.C. §§ 2011–2029 (Supp. V 1981), went into effect on October 1, 1977, and expressly provided that the 1964 Act should apply to all causes of action that had arisen and all cases that had not yet proceeded to final judgment before that date. *See* FSA of 1977, § 1303, 7 U.S.C. § 2011 n. (Supp. V 1981). Since the theft in the present case occurred on or about January 31, 1977, the 1964 Act applies.

2. Louisiana relies on two recent cases, *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), and *New Jersey v. Hufstedler,* 662 F.2d 208 (3d Cir.1981), *cert. granted,* —— U.S. ——, 103 S.Ct. 48, 74 L.Ed.2d 55 (1982), both of which contain language to the effect that joint federal-state programs are like contracts, the terms of which must be expressly and specifically set out in the applicable statute, rather than in the regulations. 451 U.S. at 17, 101 S.Ct. at 1540; 662 F.2d at 214. Neither case is analogous to the present one. *Pennhurst* involved the imposition upon Pennsylvania of a heavy, *affirmative* burden to provide certain specialized services to the retarded when that burden did not appear on the face of the statute. The present case involves the assumption of no affirmative burden whatsoever. *Hufstedler* involved the imposition of an affirmative duty to repay misspent funds that would have brought an immediate, if temporary, end to certain federal-state educational programs for the disadvantaged in New Jersey and Pennsylvania; moreover, and as the court in *Hufstedler* noted, a contrary result would have meant that underprivileged school children—those whom the statute was designed to assist—would have suffered *twice,* once when the funds in question were misapplied for the benefit of others, and a second time when programs were eliminated in order to apply the money saved against the debt owed to the federal government. 662 F.2d at 217. In the present case, on the other hand, the Secretary is doing all that he can to avoid cutting off the supply of food stamps, even though Louisiana has urged him to do so. *See* note 5, *infra.* In short, when the "clarity of expression" argument is applied to this case it amounts to no more than a restatement of the desired result. It is not a persuasive argument.

*See Knebel v. Hein,* 429 U.S. 288, 294, 97 S.Ct. 549, 553, 50 L.Ed.2d 485 (1977) (upholding food stamp regulation even though it was admittedly, in plaintiff's case, "somewhat unfair").

■ Louisiana argues, finally, that even if the Secretary's strict-liability and presumption-of-redemption regulation is valid, the Secretary still may not lawfully set off the value of the stolen stamps against Louisiana's letter of credit with the Department of the Treasury. The Secretary's set-off procedure in effect deducts the value of the stamps from the general food-stamp money that Louisiana receives from the federal government. This, according to Louisiana, is illegal because it is not authorized by any specific provision of the Act. For the reasons given in the opinion of the district court, we disagree.

Louisiana has presented several counter-arguments on this appeal, none of which we find persuasive. Louisiana has misread the applicable statute, section 3 of the Federal Claims Collection Act of 1966, 31 U.S.C.

§ 952 (1976);[3] has misstated the effect of the holding in the principal case that appears to reach a contrary conclusion, *New Jersey v. Hufstedler,* 662 F.2d 208 (3d Cir. 1981), *cert. granted,* —— U.S. ——, 103 S.Ct. 48, 74 L.Ed.2d 55 (1982);[4] and has misinterpreted the remedy that is expressly set out in the Food Stamp Act itself, FSA § 10(f), 7 U.S.C. § 2019(f) (1976) (superseded).[5]

The judgment of the district court is therefore

AFFIRMED.

---

**3.** Louisiana maintains that section 3 of the Claims Collection Act imposes upon the government an out-of-court settlement ceiling of $20,000, thus rendering the $138,832 collection in the present case *ultra vires.* According to the plain meaning of the statute, however, the government is prohibited only from "compromis[ing]" with or excusing those who owe it more than $20,000. The limitation does not apply in the present case because the government is not compromising or excusing the payment of anything. On the contrary, it is vigorously insisting that Louisiana must pay the full $138,832 lost.

**4.** *Hufstedler* held that a common-law right of set off must be exercised in a court of competent jurisdiction, and not by an administrative agency acting alone. 662 F.2d at 217. That holding cannot guide our decision in the present case for at least two reasons. First, this Circuit has already decided that common-law set-off remedies can be exercised by an administrative agency, *Mount Sinai Hospital v. Weinberger,* 517 F.2d 329 (5th Cir.1975), *cert. denied,* 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976); and second, the present case concerns not a common-law set off, but rather one under the Claims Collection Act regulations, which the Secretary has incorporated by reference, *see* 7 C.F.R. § 1.52 (1977) (superseded) (incorporating by reference 4 C.F.R. §§ 101–105 (1977) (superseded)).

**5.** Section 10(f) provides that if a participating state does not substantially comply with the Food Stamp Act or the applicable regulations, then the Secretary shall notify the state of the noncompliance and give a "reasonable period of time for the correction of such failure." If the state fails to correct the defect, the Secretary is required to stop issuing stamps to those who live in "the political subdivisions where such failure has occurred." Louisiana argues that this section provides the Secretary with his *only* remedy, i.e., that he is required to stop issuing food stamps to everyone in New Orleans. We reject this argument because, like the Secretary, we think that the set off remedy is less extreme and protects those very citizens whom the statute was designed to assist, namely, those who are so poor that they cannot adequately nourish themselves without outside assistance.

Louisiana also appears to suggest that section 10(f) provides an appropriate compromise mechanism for the settlement of federal-state disputes. Our resolution of the first two issues in this case, however, leaves nothing to compromise: Louisiana owes the federal government $138,832, and the only remaining question (the third issue in this case) is how the money should be paid. We think that that issue is adequately addressed in the opinion of the district court.