**Marge METZER, on behalf of herself and all others similarly situated, Plaintiffs,**

v.

**Richard LYNG, Secretary of the United States Department of Agriculture; and Sandra Gardebring, Commissioner, Minnesota Department of Human Services, Defendants.**

Civ. No. 6–86–932.

United States District Court, D. Minnesota, Sixth Division.

June 26, 1987.

---

Ann Cofell, St. Cloud, Minn., St. Cloud Area Legal Services, for Marge Metzer, et al.

John Docken, Office of General Counsel, U.S. Dept. of Agr., Washington, D.C., for

Richard Lyng, Secretary of the U.S. Dept. of Agr.

Patricia Sonnenberg, Sp. Asst. Atty. Gen., St. Paul, Minn., for Sandra Gardebring, Comm'r, Minnesota Dept. of Human Services.[1]

## MEMORANDUM AND ORDER

RENNER, District Judge.

Before the Court is the federal defendant's motion to dismiss for failure to state a claim and the plaintiffs' cross-motion for partial summary judgment.[2] After a hearing held on May 27, 1987, the Court took the matters under advisement.

## FACTS

By complaint filed in October, 1986, plaintiffs seek declaratory judgment and monetary relief. Named plaintiff Metzer challenges defendants' reduction of her food stamp grants because of policies which, prior to August 22, 1986, included as income portions of student loans never received by Metzer because they were retained by lenders for payment of origination fees and insurance premiums. Said fees and premiums total $146 on a $2,500 loan.

Metzer represents a class[3] of all persons in the State of Minnesota whose food stamp benefits were reduced, terminated, or denied as a result of defendants' policy in the twelve months preceding filing of the lawsuit on October 31, 1986.[4] The Minnesota Department of Human Services estimates that for each month during the period of October 1985 through August 1986, between 1725 and 1741 food stamp

---

1. The state defendant neither supports nor opposes the cross-motions brought by plaintiffs and the federal defendant. The state defendant's request to be designated as a nominal party not required to defend this lawsuit pursuant to Fed.R.Civ.P. 7(b) and 17(a) is presently pending before the Magistrate.

2. In light of the fact that matters outside the pleadings have been presented and not excluded by the Court, the motions will be treated as cross-motions for summary judgment. Fed.R.Civ.P. 12(b)(6).

3. The federal defendant withdrew its objections to plaintiffs' motion for class certification prior to the May 7, 1987 hearing date. Accordingly, at the hearing, this Court summarily granted plaintiffs' motion that the action be maintained as a class action pursuant to Fed.R.Civ.P. 23.

4. By statute, food stamp allotments found to be wrongfully withheld may be restored retroactively only for a period of not more than one year. 7 U.S.C. §§ 2020(e)(11) and 2023(b).

recipients received a smaller food stamp allotment because of the policy in effect.

The parties submitted, in essence, the following stipulated facts:

1. Plaintiff Metzer is a single parent of one child.

2. She was a recipient of Food Stamps from Stearns County Social Services from July 1985 through June 1986.

3. She was a student at the St. Cloud Beauty College, a cosmetology school, from July 1985 until June 1986.

4. In August 1985, plaintiff Metzer received notice she would be receiving a $2,500 student loan from the First National Bank of Bemidji. The $2,500 loan amount when received by Metzer was reduced by $146.88 as a result of loan origination fees and insurance premiums which had been deducted.

5. In September 1985, plaintiff received a check in the amount of $2,353.12, the net proceeds of the loan.

6. The defendants had a policy, in effect from prior to October 1985 to August 22, 1986, of not deducting the amount of school loan origination fees and insurance premiums from income when determining income for Food Stamp benefit calculation purposes.

7. Plaintiff Metzer received a notice from Stearns County Social Services dated February 14, 1986, stating that her March Food Stamp grant was being reduced due to receipt of school loans and grants.

8. In calculating the amount of the school loan, which was treated as income, the County Agency deducted tuition, mandatory fees and mandatory equipment.

9. The County Agency failed to deduct the origination fee and insurance premium of $146.88, which the First National Bank of Bemidji deducted from plaintiff Metzer's student loan prior to issuing her the remaining amount of the loan.

10. As a result of the County Agency's failure to deduct the amount of loan origination fees from income, plaintiff Metzer's Food Stamp grant was reduced by $4 a month for approximately four months.

11. The action of the Stearns County Welfare Agency conformed to and was required by the policy of the defendants. Stipulation filed May 22, 1987.

Additionally, it is undisputed that origination fees and insurance premiums are deducted from all student loans before being sent to the students. The students have no other option for paying said fees.

Plaintiffs seek a declaratory judgment that defendants' policy of including as income lender retained school loan origination fees and insurance premiums when computing food stamp eligibility violates the Food Stamp Act of 1977, 7 U.S.C. § 2014(d)(1). According to plaintiffs, said fees should have been excluded from income as "a gain or benefit not in the form of money payable directly to the household." 7 U.S.C. § 2014(d)(1).

Alternatively, plaintiffs seek a declaratory judgment that defendants' policy violated 7 U.S.C. § 2014(d)(3), as amended by the Food Security Act of 1985, Pub.L. No. 99-198, Section 1509(a)(2)(B), 99 Stat. 1569. The amendment specifically excludes from income lender retained school loan origination fees and insurance premiums when computing food stamp eligibility. Plaintiffs contend the amendments were effective upon enactment on December 23, 1985.

Finally, plaintiffs seek declaratory judgment that defendants' policy was violative of equal protection guarantees under the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, in that said policy impermissibly created two separate classes of people who have identical amounts of food purchasing power—those who receive fewer food stamps because of the inclusion in income of the origination and insurance fees and those who receive more food stamps because their income is derived from other sources.

Defendant contends that the loan fees were not excludable from income under the 1977 Act and that the 1985 amendments were not effective until August 22, 1986, when implemented by the Secretary through the Administrative Procedure

Act's rulemaking process, 5 U.S.C. § 553. Therefore, argues defendant, plaintiffs' complaint contains no valid cause of action and should be dismissed.

After full consideration of the matter, the Court concludes that there are no material facts in dispute and as a matter of law defendants' former policy of including school loan origination fees and insurance premiums retained by lenders as income when computing food stamp eligibility violated neither the statutory requirements of 7 U.S.C. § 2014(d)(1) nor equal protection guarantees under the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. However, defendants' policy did violate 7 U.S.C. § 2014(d)(3), as amended by the Food Security Act of 1985, effective December 23, 1985. Accordingly, plaintiffs are entitled to seek retroactive benefits to that date. The Court will reserve jurisdiction over the issue of the specific nature of the relief to which plaintiffs are entitled.

## ANALYSIS

Eligibility for the food stamp program is based on a household's income. Prior to the Food Stamp Act of 1977, the amount of food stamps an applicant received was based upon a net income determination made under a system of multiple itemized deductions. This policy linked food stamp eligibility and a household's actual disposable income—the money available for the purchase of food.

This approach was subsequently abandoned because, *inter alia*, it allowed some non-needy families to qualify for stamps through the use of multiple unlimited deductions and did not concentrate benefits effectively on the poorest households, who often could not afford deductible expenses. H.R.Rep. 95–464, 95th Cong., 1st Sess. 3, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1704, 1971, 1980.

The 1977 Food Stamp Act replaced the long list of itemized deductions with four specific and limited itemized deductions, as well as a standard monthly deduction. 7 U.S.C. § 2014(e). Additionally, the Act provides that all benefits and money received by a household are counted as income in computing food stamp eligibility, except for twelve specific and limited exceptions. 7 U.S.C. § 2014(d).

### 1. *Plaintiffs' First Claim for Relief.*

Plaintiffs first contend that the Secretary should have excluded from income that portion of their student loans diverted for payment of origination fees and insurance premiums pursuant to 7 U.S.C. § 2014(d)(1). That section provides:

Household income for the purposes of the food stamp program shall include all income from whatever source excluding only

(1) any gain or benefit which is not in the form of money payable directly to a household ...

At first glance, the government's payment of origination fees and insurance premiums on behalf of student loan recipients does appear to confer "a gain or benefit which is not in the form of money payable directly to a household." As such, exclusion of said payments from income would seem appropriate.

However, Congress did not intend that every payment made on behalf of a household be excluded under 7 U.S.C. § 2014(d)(1). The relevant legislative history, specifically notes that

any money payable to a household, but diverted from it to a third party, either of the household's own free will (e.g., an arrangement with an employer to deduct the rent and mail it to the landlord) or involuntarily (e.g., court-ordered garnishment of wages) would be counted as income and would not be excluded pursuant to [7 U.S.C. § 2014(d)(1) ].

H.R.Rep. No. 464, 95th Cong., 1st Sess. 34, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1971, 2011.

This is precisely the type of payment involved in the present case. Plaintiffs are legally entitled to the full amount of their student loans once a loan is approved. Indeed, they are legally obligated to repay the full amount of the loan. However, as an administrative convenience, a portion of

the loan is retained to cover the necessary costs of the loan.

In that respect, payment of the fees is analogous to involuntary garnishment of wages. *See Goodier v. Block,* No. 80–CV–509 (N.D.N.Y. July 14, 1982) (finding the section 2014(d)(1) exclusion inapplicable to court ordered child support payments garnished from a food stamp recipient's wages). The contested fees, like the garnished wages, cover a household expense for which 7 U.S.C. § 2014(d)(1) does not provide a blanket exclusion. Section 2014(d)(1) simply does not exclude all income not available to pay living expenses. *Id. See also Zazulak v. Heintz,* Civil No. 84–667 (D.Conn. December 20, 1985); *Khawaja v. Bergland,* Civ. No. 77–48 (W.D. N.Y. March 13, 1980).

Regulations promulgated by the Secretary were consistent with the Congressional determination to include in household income certain payments by third parties on a household's behalf.

(iii) Moneys that are legally obligated and otherwise payable to the household, but which are diverted by the provider of the payment to a third party for a household expense, shall be counted as income and not excluded as a vendor payment. *The distinction is whether the person or organization making the payment on behalf of the household is using funds that otherwise would have to be paid to the household.* Such funds include wages earned by a household member and therefore owed to the household, a public assistance grant to which a household is legally entitled, and support or alimony payments in amounts which legally must be paid to a household member. If an employer, agency, or former spouse who owes these funds to a household diverts them instead to a third party to pay for a household expense, these payments shall still be counted as income to the household.

5. According to the legislative history,
 Mandatory fees would encompass any expense *required by a school* in order to attend or enroll in a particular course (e.g., a required microscope or other equipment).

8 C.F.R. § 273.9(c) (emphasis added). The Secretary's application of these regulations so as to include as income the origination fees and insurance premiums was not unreasonable.

Moreover, in the 1977 Act, Congress specifically directed that deferred educational loans were to be included as income except to the extent said loans were used for tuition and mandatory school fees.

Household income for the purposes of the food stamp program shall include all income from whatever source excluding only

(3) all educational loans on which payment is deferred, grants, scholarships, fellowships, veteran's educational benefits and the like to the extent that they are used for tuition and mandatory school fees at an institution of higher education or school for the handicapped.

7 U.S.C. §§ 2014(d)(3). The stated exceptions are explicitly limited, unambiguous, and not subject to interpretation. Although the origination fees and insurance premiums are mandatory expenses of all student loan recipients, plaintiffs concede such expenses are not mandatory school fees for purposes of the 7 U.S.C. § 2014(d)(3) exclusion.[5]

In plaintiffs' favor, the legislative history of the 1977 Act's exclusion from income for tuition and mandatory school fees suggests that Congress meant to count as income only the portion of any school loan which was available for living expenses and to disregard any portion which would be unavailable. *See* H.R.Rep. No. 464, 95th Cong. 34–35, *reprinted in* 1977 U.S.Code Cong. & Admin.News, 1971, 2011.

Indeed, in 1985, consistent with the intent of the 1977 Act, Congress amended 7 U.S.C. § 2014(d)(3) to specifically exclude origination fees and insurance premiums.

Household income for purposes of the food stamp program shall include all income from whatever source excluding

H.R.Rep. No. 464, 95th Cong. 34–35, *reprinted in* U.S.Code Cong. & Admin.News 1971, 2012 (emphasis added).

only ... (3) all education loans on which payment is deferred, grants ... and the like to the extent they are used for tuition and mandatory fees at an institution of higher education or school for the handicapped, *and to the extent loans include any origination fees and insurance premiums.*

Food Security Act of 1985, Pub.L. No. 99–198, section 1509(a)(2)(B), 99 Stat. 1569 (emphasis added).

The very fact that Congress saw fit to amend 7 U.S.C. § 2014(d)(3), however, suggests that no existing exclusion was applicable. The legislative history says as much:

Loan origination fees and insurance premiums that are subtracted from student loans, and thus not available as income to the student recipient, have at times been counted as income to the student *because there is no specific language in the Act excluding them.* In order to clarify the intent of the present law, the bill would specifically exclude, for income computation purposes, loan origination fees and insurance premiums that reduce the actual amount received by students.

H.R.Rep. No. 271(I), 99th Cong., 1st Sess. 142, *reprinted in* 1985 U.S.Code Cong. & Admin.News, 1103, 1246 (emphasis added).

While this subsequent amendment and its legislative history must be accorded substantial weight in construing the meaning of the original law, *Red Lion Broadcasting v. F.C.C.,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969) (such amendments entitled to "great weight"); *May Department Stores v. Smith,* 572 F.2d 1275, 1278, (8th Cir.) *cert. denied,* 439 U.S. 837, 99 S.Ct. 122, 58 L.Ed. 2d 134 (1978) (while not controlling, subsequent amendments and their legislative histories should be given substantial weight), Congressional intent with respect to the 7 U.S.C. 2014(d)(3) exclusion should not control this Court's interpretation of the reach of 7 U.S.C. § 2014(d)(1), an entirely different exclusion.

2. *Plaintiffs' Second Claim for Relief.*

 In the Food Security Act of 1985, Congress made explicit the exclusion from income for loan origination fees and insurance premiums under the 7 U.S.C. § 2014(d)(3) exclusion. Plaintiffs contend that the 1985 amendment was effective as of December 23, 1985. The Court agrees. Accordingly, for the bulk of the period of time for which plaintiffs seek retroactive benefits, October 30, 1985—October 31, 1986, defendants' policy was in clear violation of 7 U.S.C. § 2014(d)(3), as amended.

Congress provided that the Food Security Act of 1985 be effective on the date of its enactment, December 23, 1985.

Except as otherwise provided in this Act, this Act and the amendments made by this Act shall become effective on the date of the enactment of this Act.

Section 1801, 99 Stat. 1660. Section 1509(a)(2)(B), 99 Stat. 1569, amending 7 U.S.C. § 2014(d)(3), does not provide for a different effective date.

However, the Food Security Act of 1985 also contains an implementation date distinct from the effective date.

Not later than April 1, 1987, the Secretary shall issue rules to carry out the amendments made by this title.

Section 1583, 99 Stat. 1595. Defendant argues that food stamp entitlements come into effect only when statutory changes are implemented rather than on the effective date of the statutory change.

Thus, on August 22, 1986, some eight months after the effective date of section 1509(a)(2)(B), the Secretary issued regulations implementing the income exclusion for loan origination fees and insurance premiums. 51 F.Reg. 30045–30049. Rather than giving the regulations retroactive effect, the regulations were effective as of the date of issuance. 51 F.Reg. 30045.

The Secretary's interpretation of the implementation period was incorrect. Congress' decision to allow the Secretary until April 1, 1987 to issue rules was not intended to give the Secretary the power to ignore the effective date of the statute. To so conclude would render the effective date established by section 1801 irrelevant sur-

plusage.[6] Such an interpretation is not favored. *National Insulation Transportation Comm. v. Interstate Commerce Comm.,* 683 F.2d 533, 537 (D.C.Cir.1982). Instead, both provisions should be given effect by making regulations, whenever ultimately issued, effective retroactively to the effective date provided by the statute.

If Congress had intended to make the amendment to 7 U.S.C. § 2014(d)(3) effective only when the Secretary implemented regulations, it could have done so explicitly. In fact, Congress did precisely this in the Food Stamp Act of 1977. The 1977 Act's implementation provision instructed the Secretary to implement the Act "as expeditiously as possible consistent with efficient and effective administration of the Food Stamp Program." Section 1303(a), 91 Stat. 979 (1977). However, the same provision specifically directed that inconsistent provisions of the Food Stamp Act of 1964 be kept in effect until new implementing regulations were issued by the Secretary.

> The provisions of the Food Stamp Act of 1964, as amended, which are relevant to current regulations of the Secretary governing the food stamp program, shall remain in effect until such regulations are revoked, superceded, amended, or modified by regulations issued pursuant to the Food Stamp Act of 1977.

*Id.*

Congress chose not to include a similar savings provision in the 1985 Amendments. Indeed, the Conference Committee reporting out the bill specifically noted, "[t]he Conference substitute adopts the Senate provision with regard to making provisions effective upon enactment unless otherwise specified." H.Conf.Rep. No. 99-447, 99th Cong., 1st Sess. 562, *reprinted in* U.S.Code Cong. & Admin.News 2251, 2488.

The Court is unconvinced by defendant's assertion that granting benefits back to the effective date of the Food Security Act is an unjustified windfall to food stamp recipients and counter to Congress' demonstrated "antipathy" to the award of retroactive benefits. First, providing needy food stamp recipients with benefits clearly due them under Federal law is hardly a windfall. This is especially true where the amendment at issue merely "clarified" pre-existing law to provide a benefit consistent with Congress' original intent. Second, the food stamp act itself specifically authorizes lump sum awards of retroactive benefits for a prior period of up to one year, whether the finding of an underpayment is made by the agency, 7 U.S.C. § 2020(e)(11), or as the result of a court decision. 7 U.S.C. § 2023(b).

### 3. *Plaintiffs' Third Claim for Relief.*

■ Plaintiffs contend that defendants' policy resulted in discrepancies in food purchasing power between loan and non-loan households in violation of the equal protection guarantees of the Fifth and Fourteenth Amendments of the Constitution, and 42 U.S.C. § 1983. The Court does not agree.

It is indeed true that under defendants' former policy, a loan and non-loan household having the same actual food purchasing power received different amounts of food stamps. But this alone is not actionable as a violation of equal protection. *Knebel v. Hein,* 429 U.S. 288, 97 S.Ct. 549, 50 L.Ed.2d 485 (1977).

The origination and insurance fees are an expense of student loans that individuals must assume to acquire the loan. In that respect, the fees are a household expense just like any other. The fact that not every household incurs this particular expense does not establish an equal protection violation.

The Food Stamp Act is not designed to provide exclusions or deductions for all

---

**6.** Moreover, numerous sections of the Food Security Act of 1985 have separate effective dates and are not bound by the general effective date set forth in section 1801. *See e.g.* section 1511, 99 Stat. 1570 (eff. May 1, 1986) (codified as amended at 7 U.S.C. § 2114(e)); section 1514, 99 Stat. 1572 (eff. May 1, 1986) (codified as amended at 7 U.S.C. § 2014(g)); section 1531, 99 Stat. 1582 (eff. October 1, 1986) (codified as amended at 7 U.S.C. § 2020(i) and (j)); section 1542, 99 Stat. 1589 (eff. October 1, 1986) (codified as amended at 7 U.S.C. § 2027). Under defendant's interpretation, these effective dates would also be rendered surplusage.

household expenses. In fact, by amending the Food Stamp Act in 1977, Congress specifically rejected basing eligibility for stamps on disposable income.

> With respect to the constitutional issues, the Committee can only note that it views its broad-gauged definition of income as rational and equitable, since it intends to measure income as broadly as possible to be fair to all recipients as well as to the tax-paying public and not simply by reference to purchasing power available for food.

H.R.Rep. No. 464, 95th Cong., 1st Sess. 27, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1971, 2004.

Congress recognized that this policy might be unfair to certain individual food stamp recipients. In accord with this intent, the Secretary was free, in a reasonable exercise of his discretion, to include said fees in income. *See Knebel, supra,* 429 U.S. at 294–95, 97 S.Ct. at 553–54.

Based on the foregoing, and a review of the entire file and record IT IS HEREBY ORDERED that plaintiffs' motion for partial summary judgment be denied and defendants' motion granted with respect to plaintiffs' first and third claims for relief. These claims are dismissed.

IT IS FURTHER ORDERED that, with respect to plaintiffs' second claim for relief, plaintiffs' motion for partial summary judgment be granted and defendants' motion be denied.

IT IS HEREBY DECLARED that defendants' policy, prior to August 22, 1986, of including as income lender retained school loan origination fees and insurance premiums when computing school loan recipients' food stamp eligibility violated 7 U.S.C. § 2014(d)(3), as amended by the Food Security Act of 1985, effective December 23, 1985. Plaintiffs are entitled to seek retroactive benefits to that date.

IT IS FINALLY ORDERED that the Court will retain jurisdiction over the issue of the relief to which plaintiffs are entitled.