715 F.2d 477
 Robert KLAIPS, Marcile Patton, and Bert Giles, on behalf of
themselves and all others similarly situated,
Plaintiffs-Appellants,
v.
Robert BERGLAND, in his capacity as Secretary of the United
States Department of Agriculture; Anthony Mitchell,
individually and in his capacity as Executive Director of
the Utah Department of Social Services; and Norman Angus,
individually and in his capacity as Deputy Director of the
Utah Department of Social Services, Defendants-Appellees.
 No. 80-2100.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 19, 1983.
 
 W. Paul Wharton, Utahns Against Hunger, Salt Lake City, Utah (Lucy Billings of Utah Legal Services, Inc., Salt Lake City, Utah, was also on the brief) for plaintiffs-appellants.
 Ralph H. Johnson, Asst. U.S. Atty., Salt Lake City, Utah (Ronald L. Rencher, U.S. Atty., Salt Lake City, Utah, was also on the brief), for Robert Bergland, Secretary of the U.S. Dept. of Agriculture.
 Franklyn B. Matheson, Asst. Atty. Gen. of Utah, Salt Lake City, Utah (David L. Wilkinson, Utah Atty. Gen., Salt Lake City, Utah, was also on the brief) for defendants-appellees, Anthony Mitchell and Norman Angus.
 Before HOLLOWAY, BARRETT and LOGAN, Circuit Judges.
 HOLLOWAY, Circuit Judge.
 
 
 1
 This is a class action brought for welfare recipients of the State of Utah to adjudicate their rights under the Food Stamp Act of 1964, as amended, 7 U.S.C. § 2011 et seq. (1970). Plaintiffs represent all persons in Utah who have been, are, or will be participants in the food stamp program while at the same time participating in a Work Experience and Training project (WEAT) as a condition of eligibility for General Assistance (GA) monies or Aid to Families with Dependent Children (AFDC).[1] The defendants are Robert Bergland, Secretary of Agriculture; Anthony Mitchell, individually, and as Executive Director of the Utah Department of Social Services; and Norman Angus, individually, and as Deputy Director of the Utah Department of Social Services. Defendants were at all times pertinent to this action the officials with ultimate responsibility for the administration of the food stamp program.
 
 
 2
 Plaintiffs argue that a wrongful denial to them of the benefit of the Earned Income Deduction, 7 C.F.R. § 271.3(c)(1)(iii)(a) (1978), resulting from refusal to treat WEAT income as earned income, caused them to receive fewer food stamp benefits than those to which the regulations under the Food Stamp Act entitled them. Plaintiffs sought both a declaratory judgment as to the proper classification of such income and retroactive food stamp benefits equal to those which they had been wrongly denied.
 
 
 3
 The case was considered on stipulated facts, briefs and argument and the trial court entered findings and conclusions, and granted partial relief to the plaintiffs. (I R. 153-56).[2] The court found that it was possible for the State to identify substantially all of the potential class members with eligibility retroactive to June 20, 1978; that a declaratory judgment may be entered for the plaintiff class that under the Food Stamp Act of 1977, in light of the Secretary's clarifying order of June 20, 1978, the class was entitled to relief retroactively to June 20, 1978; and that claims for any relief after April 1, 1980, are moot.[3] The court found further that the State should identify those who would have been eligible for increased stamps from June 21, 1978, to April 1, 1980, but for the State's failure to adopt a policy in conformity with the June 20, 1978, clarifying regulation; that the State should make payment of a retroactive benefit to the claimants; that the Federal Government should reimburse the State for the stamps issued retroactively and one-half of the administrative cost thereof; but that because of the difficult practical problems of identification, the uncertainty of entitlement prior to June 20, 1978, and other reasons stated, earlier reimbursement should not be ordered. The judgment entered held that after June 20, 1978, the denial of the earned income deduction to plaintiffs who participated in the food stamp program and also the WEAT Project violated plaintiffs' rights under the Food Stamp Act.
 
 
 4
 Plaintiffs bring this timely appeal from the district court's judgment only insofar as it denied their claims for retroactive benefits prior to June 20, 1978. Defendants appeal no portion of the court's order.
 
 
 5
 * Congress passed the Food Stamp Act in 1964 to "safeguard the health and well-being of the Nations [sic] population and raise levels of nutrition among low-income households."[4] Pursuant to the Act, the United States Department of Agriculture (USDA) instituted a program to provide food assistance to those who cannot afford to purchase a nutritionally adequate diet. The USDA administers the program at the national level, and participation by each state is voluntary.
 
 
 6
 For a household to be eligible for the program the state of the household's residence must have elected to participate. In administering the program, the federal government, through the USDA, pays 100 percent of the program's benefits and all administrative costs at the national level. Should a state decide to participate, state agencies, usually those responsible for public assistance programs, administer the program at the state and local levels and pay their own administrative expenses. Participating states must submit to the USDA for approval, plans for the operation of state programs in accordance with statutory and USDA standards. The State of Utah participates in the food stamp program through its Department of Social Services (UDSS), and that department submitted such a plan to the USDA. (I R. 104).
 
 
 7
 The program is designed to operate through the normal channels of trade. An eligible low income household pays a certain amount of money, that amount depending upon the household income and number of persons in the household, and it then receives food stamp coupons of a greater face value than the amount paid. The coupons are redeemable at face value at participating retail stores authorized by the USDA. Federal and state regulations define "income" for purposes of the program, and they provide for certain deductions from income to arrive at net household income. A household's net income is the figure used to determine the amount an eligible household must pay for its food stamps. Applicable deductions work to decrease a household's net income for food stamp purposes and thereby to increase its food stamp benefits.
 
 
 8
 One such deduction is the "Earned Income Deduction."[5] Until March 1, 1979, this deduction was in the amount of:Ten per centum of income from compensation for services performed as an employee or training allowance not to exceed $30.00 per household per month.
 
 
 9
 7 C.F.R. § 271.3(c)(1)(iii)(a) (1978). The Utah regulations incorporated this deduction, together with an explanation of its purpose:
 
 
 10
 The ten percent deduction is intended to cover those expenses incidental to employment and/or training and includes transportation, meals away from home, special clothing and other incidentals necessary for such employment or training including placement fees paid to employment agencies, etc. necessary for such employment and/or training.
 
 
 11
 Vol. IV UDSS Assistance Payments Administration Manual 401.41.
 
 
 12
 On May 2, 1978, the Federal Register published notice by the USDA of a proposed rulemaking involving the food stamp program.[6] The notice set forth an extensive overhaul of the regulations implementing the program to comport with the provisions of the Food Stamp Act of 1977.[7] The proposed regulations outlined a revised definition of "income" for purposes of the program, including a definition of "earned income":
 
 
 13
 (b) Definition of income. Household income shall mean all income from whatever source.... (1) Earned income shall include: (i) All wages and salaries of an employee. Assistance payments from programs which require, as a condition of eligibility, the actual performance of work without compensation other than the assistance payments themselves, shall be considered earned income to the extent that the payments actually substitute for wages or salaries. Special payments for work-related expenses in addition to the basic assistance payment shall be considered part of the assistance payment and not as additional compensation.
 
 
 14
 Proposed C.F.R. § 273.9(b), 43 Fed.Reg. 18921 (May 2, 1978). Also included was a proposed earned income deduction providing for a deduction from gross household income of twenty percent of earned income as defined in § 273.9(b).[8]
 
 
 15
 On June 20, 1978, prior to the completion of the formal rulemaking procedure involving the rules proposed on May 2, 1978, the Federal Register published the following USDA notice regarding the availability of the earned income deduction to food stamp recipients' income attributable to "workfare" programs:
 
 
 16
 As a result of the Garrett v. Bergland lawsuit in Ohio, the problem of classifying "workfare" income has come to our attention. A workfare program is a State or local General Assistance (GA) program in which participants are required to work for all or part of their GA grants. The portion of the GA grant attributable to participation in workfare shall be considered earned income for the purpose of the 10 percent work-related expense deduction provided by 7 C.F.R. § 271.3(c)(1)(iii)(a). If the entire GA grant is attributable to participation in a workfare project or if the earned portion of the GA grant cannot be distinguished from the unearned portion, the entire grant is subject to the earned income deduction. Grant supplements designated for the payment work related expenses, such as transportation, are also subject to the 10 percent deduction.
 
 
 17
 43 Fed.Reg. 26462 (June 20, 1978).
 
 
 18
 Finally, on October 17, 1978, after the period of formal notice and comment, the regulations proposed on May 2 were published in the Federal Register as adopted, to become effective by March 1, 1979.[9]
 
 
 19
 All state assistance monies had previously been considered part of household income for the purpose of computing food stamp benefits,[10] but the May 2, 1978 proposed rulemaking, the June 20, 1978 notice and the October 17, 1978 official promulgation of the proposed regulations were the first indication that workfare monies might be considered earned income eligible for the deduction.
 
 II
 
 20
 The State of Utah's public assistance programs are, in part, workfare programs. As a condition of continued eligibility for GA and AFDC monies, some recipients of such monies must participate in WEAT projects. Such recipients receive the monthly GA and AFDC grants for their households, and they are then required to work 96 hours per month on a project as assigned by the UDSS. They may be required by the project to perform the same functions as regular employees. The WEAT participant GA and AFDC recipients receive in addition to such monies a $25.00 monthly allowance to cover expenses incidental to WEAT participation. (See I R. 106-09).
 
 
 21
 Despite the USDA's June 20, 1978 notice and the October 17, 1978 regulation, the UDSS did not begin to apply the earned income deduction in calculating the net household income of WEAT participant households which also applied for food stamps until April 1, 1980.[11] Plaintiffs brought suit on behalf of all persons in Utah who have been, are, or will be participants in the food stamp program while at the same time participating in a WEAT project as a condition of eligibility for GA or AFDC monies. Plaintiffs sought a declaratory judgment to the effect that failure to so apply the earned income deduction constituted a violation of the Food Stamp Act and the regulations thereunder, and also violated the equal protection guarantee of the Fourteenth Amendment and the equal protection component of Fifth Amendment due process. Plaintiffs also sought a refund to all members of the plaintiff class of all food stamp benefits wrongfully withheld. (I R. 13-14).
 
 
 22
 The court granted plaintiffs' prayer for declaratory relief to the extent of holding that the denial of the earned income deduction to households which participated in the food stamp program and also in a WEAT project violated plaintiffs' rights under the Food Stamp Act, in light of the USDA's June 20, 1978 notice. (I R. 154, 158). Further, the court ordered that the class members' claims for benefits retroactive to June 20, 1978, in amounts equal to the benefits that would have been paid if defendants had not failed to regard WEAT monies as earned income for purposes of the deduction, should be paid.[12] (I R. 155, 158). The court refused, however, to order payment of any benefits plaintiffs claimed to be due prior to June 20, 1978, saying:
 
 
 23
 Because of the difficult practical problems that would ensue for identification purposes, the ever decreasing accuracy and meaningfulness of such identification, the uncertainty if not unlikelihood of any entitlement prior to the federal administrative ruling of June 20, 1978, the implicit acceptance of the federal agency prior to that time of [the] State's plan denying the benefits in question and the lack of any assurance that it would be reimbursed for the payment of the benefits in question prior to that date, the defendants shall not be ordered herein to pay retroactive benefits to members of the class for periods of eligibility prior to that date, or to identify class members claimed by plaintiffs to be entitled to such benefits prior to that date.
 
 
 24
 I R. 155.
 
 
 25
 Plaintiffs appeal the trial court's denial of retroactive benefits prior to June 20, 1978. For reversal, plaintiffs contend (1) that the June 20, 1978, notice did not signify a change in the meaning of the food stamp regulations, and that the notice only clarifies the basis for retroactive relief; (2) that any practical problems in giving retroactive effect to a "clarification in policy" are not to be governed by cases limiting retroactive effect of a change in law; and (3) that the trial court's ruling has the effect of classifying WEAT participants into two groups, unequally treated, and thus violates the Constitution's equal protection guarantees.
 
 III
 
 26
 Plaintiffs insist that even absent the June 20, 1978 notice and the October 17, 1978 regulation, the Food Stamp Act and its then existing regulations establish that WEAT workfare income constituted earned income for purposes of the food stamp program's earned income deduction. They argue that the agency's actions in promulgating the new October 17, 1978 regulation demonstrate that there was no change in the regulations substantively because there was no notice of proposed rulemaking; there was no statement in the rule adopted of the basis and purpose of the regulation, (Brief of Plaintiffs/Appellants at 5); and the notice published June 20, 1978, was an interpretive rule which should be given retroactive effect. (Reply Brief of Plaintiffs-Appellants at 5). We cannot agree.
 
 
 27
 First, prior to the June 20 notice, neither the Food Stamp Act, the Utah regulations designed to administer the Act at the state level, nor the federal regulations contained any reference to workfare income. Prior to the Food Stamp Act of 1977, the federal statute contained no definition of income. The USDA's implementing regulations defined "income" and provided for an earned income deduction, as quoted above, but the regulations' definition of income did not differentiate between earned and unearned income. "Income," defined as "all income which is received or anticipated to be received during the month" (7 C.F.R. § 271.3(c)(1)(i) (1978)), included "All compensation for services performed as an employee" (§ 271.3(c)(1)(i)(a)), and "payments received from federally aided public assistance programs, general assistance programs, or other assistance programs based on need." (§ 271.3(c)(1)(i)(f)). The Food Stamp Act of 1977 amended the statute to include a definition of "income" for purposes of the program as "all income from whatever source...." 7 U.S.C. § 2014(d). For the first time, the Act also made the earned income deduction a statutory requirement. 7 U.S.C. § 2014(e). And the first regulatory treatment of workfare income came in the 1978 revisions of the regulations.
 
 
 28
 Moreover, the manner in which the USDA set about to change the food stamp regulations regarding earned income indicates that there was a change in policy, and not merely an interpretive regulation. The Food Stamp Act, 7 U.S.C. § 2013, authorizes the Secretary of Agriculture to issue such regulations as he "deems necessary or appropriate for the effective and efficient administration of the food stamp program...."; section 2013 also requires, however, that all such regulations shall be promulgated "in accordance with the procedures set forth in section 553 of [the Administrative Procedures Act]" (5 U.S.C. § 553).
 
 
 29
 Section 553 outlines a formal procedure which agencies must follow when they promulgate rules. Among other things, the proposed rule must be published in the Federal Register, and interested persons must be given an opportunity to participate in the rulemaking through submission of written data, views, or arguments. Only when a proposed regulation is an interpretative rule, a general statement of policy, or a rule of agency organization, procedure, or practice, or other special conditions for exceptions apply, see 5 U.S.C. § 553(b)(3)(B), is the rulemaking process exempt from the formal requirements.
 
 
 30
 Here, contrary to the assertion of plaintiff-appellants, there was a notice of proposed rulemaking issued by the USDA. The proposed rulemaking of May 2, 1978, noted above, was its effort to implement the changes worked by the 1977 Act. The May 2 publication contained the following explanation of the proposed changes:
 
 
 31
 The regulations also propose treating certain assistance payments as earned income. This policy applies to assistance payments which are provided in lieu of wages or salary, to individuals required to work as a condition of receiving the assistance.... In such cases, since the individual actually works for the assistance payments the household will receive the deduction for work related expenses the same as any other employed household.
 
 
 32
 43 Fed.Reg. 18887-18888 (May 2, 1978). (Emphasis added). Furthermore, in both the May 2 and October 17, 1978, publications there was a brief statement of the basis and purpose of the new rule, in compliance with 5 U.S.C. § 553(c). Thus there was compliance with the dual requirements of the APA for notice of the proposed rulemaking and of the adopted rule 30 days before it becomes effective. See Rowell v. Andrus, 631 F.2d 699, 702 (10th Cir.1980).
 
 
 33
 We thus conclude that the classification of workfare-type income as earned income was a change in the meaning of the food stamp regulations, designed to implement Congress' expressed intention in passing the Food Stamp Act of 1977, and prior to the change, workfare income was ineligible for classification as earned income for the purpose of calculating the earned income deduction.
 
 
 34
 Finally, we cannot accept plaintiffs' argument that the relationship between the State and the WEAT participants was that of employer to employee, and that the WEAT related GA and AFDC grants they received therefore qualified for the pre-1978 10% deduction for service performed as an employee or training allowance under 7 C.F.R. § 271.3(c)(iii)(a) (1978), even absent the June 20, 1978 notice and the regulation promulgated thereafter. Not all recipients of GA and AFDC grants participate in WEAT; were plaintiffs incapable of such participation, they would not as a consequence be ineligible for such grants. Furthermore, although WEAT participants may perform the same functions as regular employees at some of the projects to which they are assigned, they differ from state employees in that they do not receive the same salary, safe working conditions, job security, career development, Social Security, pension rights, collective bargaining, or grievance procedures as do the actual employees. (I R. 107). Participation by plaintiffs in WEAT projects is not direct compensation for services performed, but is a condition of continued eligibility for public assistance in Utah.
 
 
 35
 There was, however, in Garrett v. Bergland, No. C-1-78-02, USDC, S.D.Ohio filed 11/6/78 (unpublished), an indication that the USDA made an administrative interpretation that the Work Fare recipients were entitled to the earned income deduction under the law prior to 1978.[13] Such a position is not taken by the federal defendants in the instant case.[14] Nevertheless, because of this uncertainty we have also considered an additional ground on which the district court's ruling may be sustained, namely that the limitation of retroactive relief to extend back only to June 20, 1978 was a proper exercise of discretion. We turn to that issue now.[15]
 
 IV
 
 36
 We hold that the district court did not abuse its discretion by limiting its order of retroactive benefits to the approximately twenty-one month period between June 20, 1978, and April 1, 1980, the date upon which Utah's food stamp program came into compliance with the revised federal regulations.
 
 
 37
 It is true that courts may properly restore wrongfully withheld food stamp benefits. See, e.g., Bermudez v. U.S. Dep't. of Agriculture, 490 F.2d 718 (D.C.Cir.), cert. denied, 414 U.S. 1104, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973); Carter v. Butz, 479 F.2d 1084 (3d Cir.), cert. denied, 414 U.S. 1094, 94 S.Ct. 727, 38 L.Ed.2d 552 (1973). In fact, the Food Stamp Act itself requires such restoration of benefits both by the courts, 7 U.S.C. § 2023(b), and by state agencies which administer the food stamp program, 7 U.S.C. § 2020(e)(11). See also 7 C.F.R. § 272.1(g)(1)(iv) (1983). It does not follow, however, that all food stamp benefits wrongfully withheld for no matter how long a period of time must be restored to food stamp recipients upon a finding that they may not have received all of the food stamp benefits to which they were entitled.
 
 
 38
 The food stamp program is designed to meet a present need of low income households for assistance to purchase a nutritionally adequate diet. See 7 U.S.C. § 2011 (1970). We cannot say it was error for the district court, in fashioning an equitable remedy, to adopt the limitation that retroactive relief extend back only to June 20, 1978. See Rothstein v. Wyman, 467 F.2d 226, 235-36 (2d Cir.), cert. denied, 411 U.S. 921, 93 S.Ct. 1552, 36 L.Ed.2d 315 (1973).[16] The administrative burdens and the uncertain efficacy of relief back of that date are valid reasons for different treatment of the problem involving this social welfare program.
 
 
 39
 Plaintiffs argue further that the district court's June 20, 1978, cut-off date as to retroactive relief creates two classes of persons, unequally treated, in violation of the Fifth and Fourteenth Amendments to the Constitution. The distinction between food stamp recipient/WEAT participants prior to June 20, 1978 and food stamp recipient/WEAT participants subsequent to June 20, 1978, they argue, is an impermissible classification, having no rational relationship to any legitimate governmental objective.
 
 
 40
 We cannot agree. When an allegedly unconstitutional classification involves the area of economics and social welfare and does not involve suspect classifications or fundamental rights,[17] a court must examine the classification under the rational basis standard. Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970); Malis v. Hills, 588 F.2d 545, 548 (6th Cir.1978); see Knebel v. Hein, 429 U.S. 288, 97 S.Ct. 549, 50 L.Ed.2d 485 (1977); Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). The classification at issue need only have a rational relationship to a legitimate governmental interest.[18] United States Department of Agriculture v. Moreno, 413 U.S. 528, 533, 93 S.Ct. 2821, 2825, 37 L.Ed.2d 782 (1973). Furthermore, it has been held that the avoidance of administrative burdens is a legitimate governmental interest justifying a challenged classification, although the effect of the classification in that case was merely to diminish the payment of welfare monies, not to deny them altogether. See Allen v. Bergland, 661 F.2d 1001, 1007 (4th Cir.1981). We are convinced that the district court's order did not violate equal protection principles here.
 
 V
 
 41
 Accordingly we hold that the district court's judgment was not in error or an abuse of discretion and the judgment is
 
 
 42
 AFFIRMED.
 
 
 
 [1]
 Pursuant to F.R.Civ.P. 23, the district court determined that this action should proceed as a class action, the named plaintiffs being proper representatives of the class. I R. 35
 
 
 [2]
 While the final order and judgment stated that plaintiffs' motion for summary judgment was granted, in view of the findings, conclusions and recitation in the judgment about trial, we treat the case as decided after a full submission on stipulated facts
 
 
 [3]
 The district court's order of retroactive benefits covers the period between June 20, 1978, and April 1, 1980. The court found that claims for relief for any period subsequent to April 1, 1980 are moot. From that date, the Utah Department of Social Services classified WEAT income in the manner sought by plaintiffs. See I R. 8
 
 
 [4]
 7 U.S.C. § 2011 (1970)
 
 
 [5]
 This deduction was not labelled the "Earned Income Deduction" until its publication at 7 C.F.R. § 273.9(d)(2) (1979). At that time it became a twenty percent deduction with no monthly monetary limit
 
 
 [6]
 43 Fed.Reg. 18873-18958 (May 2, 1978). The notice solicited comments and directed that they be received on or before June 16, 1978 (p. 18874). The notice contained both an extensive explanation of the proposed regulation (pp. 18874-18905), and the full text of the regulation itself (pp. 18905-18958). While the briefs of the parties do not refer to the notice of proposed rulemaking, discussed in the text, we are satisfied that such notice was properly given
 
 
 [7]
 Pub.L. No. 95-113, §§ 1301-1304, 91 Stat. 915, 958-81 (1977)
 
 
 [8]
 Proposed C.F.R. § 273.9(d)(2), 43 Fed.Reg. 18922 (May 2, 1978). The USDA explanations of the proposed new definition of "income" and of the proposed new earned income deduction appear at 43 Fed.Reg. 18887, 18890 (May 2, 1978)
 
 
 [9]
 43 Fed.Reg. 47846, 47903-47905 (Oct. 17, 1978). Although the June 20, 1978 notice speaks only to GA payments, the language of the adopted regulation is broad enough to include as earned income AFDC payments to Utah WEAT participants
 
 
 [10]
 See 7 C.F.R. § 271.3(c)(1)(f) (1978): "[I]ncome shall mean any of the following but is not limited to: ... (f) Payments received from federally aided public assistance programs, general assistance programs, or other assistance programs based on need...."
 
 
 [11]
 Until January 15, 1980, the USDA gave its approval to the UDSS's plan for administration of food stamp benefits. The plan did not consider WEAT monies as earned income for purposes of the deduction. On January 15, 1980, USDA approval was revoked because of such noncompliance with the June 20, 1978 notice and regulation promulgated thereafter. Starting April 1, 1980, the state practice was changed to bring the plan into compliance. (See I R. 109-10)
 
 
 [12]
 The court ordered that notice be sent by first class mail to all class members who could be identified that they might be entitled to claim a retroactive benefit in accordance with the court's findings. The court ordered that the UDSS review all such claims and make payment of retroactive benefits to all qualified claimants, and that the USDA reimburse the state for the full value of benefits issued retroactively as well as one-half of the administrative costs of the reimbursement effort. (I R. 155, 158, 160-61)
 
 
 [13]
 In Garrett v. Bergland, at p. 4 the court recites that "the federal defendants [those charged with responsibility for the administration of the food stamp program at the national level] assert that a Work Fare recipient who was called on to work is entitled to [the earned income] deduction--or was under the Old Act and will be under the new one as a matter of principle."
 In Garrett, the district court held that the plaintiffs there were entitled to the benefit of the earned income deduction for their income from Ohio's work fare program for the purpose of calculating their net household income for food stamp purposes. The court based its declaratory judgment (including an injunction effective in futuro as to plaintiffs) upon its finding that the USDA's June 20, 1978 notice concerning work fare income was controlling on the question of the treatment of such income under the food stamp regulations; the court found that the position adopted in the notice was neither plainly erroneous nor inconsistent with the food stamp regulations themselves. The court did not reach the question of plaintiffs' entitlement to the benefit of the earned income deduction prior to the June 20, 1978 USDA notice, and awarded no retroactive food stamp benefits; the court granted only prospective relief. The trial judge dismissed plaintiffs' claims against the Ohio state defendants for money damages, citing the Supreme Court's interpretation of Eleventh Amendment constraints in Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).
 
 
 [14]
 In fact, the discussion at page 7 of the Federal Defendant's Brief in Chief suggests that the USDA has not taken the position that the plaintiffs' entitlement to the claimed benefits existed prior to 1978, and that it remains unclear whether the 1978 rulemaking actually constituted a policy change. "[I]t remains difficult to positively conclude that the notice was interpretive or substantive." (Brief in Chief of Federal Defendants at 7)
 
 
 [15]
 The Attorney General of Utah has submitted a memorandum advising us of the limitation on retroactive relief made by 7 U.S.C. § 2023(b), added December 22, 1981, 95 Stat. 1286. That statute provides, in pertinent part:
 In any judicial action arising under this chapter, any food stamp allotments found to have been wrongfully withheld shall be restored only for periods of not more than one year prior to the date of the commencement of such action, or in the case of an action seeking review of a final State agency determination, not more than one year prior to the date of a filing of a request with the State for the restoration of such allotments or, in either case, not more than one year prior to the date the State agency is notified or otherwise discovers the possible loss to a household.
 See also, 7 C.F.R. § 273.17 (1983).
 This class action was commenced April 18, 1979. The first limitation in the statute, geared to commencement of judicial action, would permit retroactive relief for one year prior thereto, or back to April 18, 1978. The trial judge here limited the relief to go back only to June 20, 1978, and the plaintiffs-appellants' challenge to that restriction on retroactive relief would thus not be disposed of fully by the statute. We therefore must consider the merits of the claim for retroactive relief as discussed in Parts III and IV of this opinion, despite the statute.
 The second limitation in the statute is geared to final state agency determinations. We are not advised of any such a determination denying the class action claims asserted herein and thus this part of the statute is not applicable in this case.
 
 
 [16]
 It is also argued by the State of Utah defendants that any retroactive award against them respecting food stamp benefits is barred by the Eleventh Amendment. See Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Buckhanon v. Percy, 708 F.2d 1209 (7th Cir.1983); Colbeth v. Wilson, 554 F.Supp. 539, 544-46 (D.Vt.) aff'd without opinion, 707 F.2d 57 (2d Cir.1983). We do not, however, reach this constitutional issue
 As to the relief awarded by the trial court subsequent to June 20, 1978, neither the State defendants nor the Federal defendants raise the issue. The Court in Edelman, 415 U.S. at 678, 94 S.Ct. at 1363, recognized that the defense of the Eleventh Amendment "sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court...." Here, however, where defendants took no cross-appeal from the award of benefits subsequent to June 20, 1978, we should not address the issue. As to the question of retroactive benefits prior to June 20, 1978, which the plaintiffs-appellants are requesting, our analysis in Parts III and IV makes discussion of the Eleventh Amendment unnecessary.
 
 
 [17]
 "[A] noncontractual claim to receive funds from the public treasury enjoys no constitutionally protected status ... though of course Congress may not invidiously discriminate among such claimants ...." Weinberger v. Salfi, 422 U.S. 749, 772, 95 S.Ct. 2457, 2470, 45 L.Ed.2d 522 (1975)
 
 
 [18]
 In the case of a legislative classification, the classification meets the rational basis test if it rationally furthers any state objective; it is constitutionally irrelevant whether the objective identified actually underlay the legislative decision. Malmed v. Thornburgh, 621 F.2d 565, 569 (3d Cir.), cert. denied, 449 U.S. 955, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980)