**Gwendolyn LYNCH, and all others similarly situated,**

v.

**Nancy-Ann E. MIN, Commissioner of the Tennessee Department of Human Services, et al.**

**No. 3-86-1078.**

United States District Court, M.D. Tennessee, Nashville Division.

April 11, 1988.

Russell J. Overby, Legal Services of Middle Tn, Inc., Nashville, Tenn., for plaintiffs.

Jimmy G. Creecy, Dianne Stamey, Atty. Gen.'s Office, James C. Thomason, III, Asst. U.S. Atty., Nashville, Tenn., Sheila Lieber, Richard A. Hertling, Dept. of Justice, Civil Div., Federal Programs Branch, Washington, D.C., for defendants.

**MEMORANDUM**

WISEMAN, Chief Judge.

Plaintiff Gwendolyn Lynch (Lynch) filed this class action against defendants Nancy-Ann Min, Commissioner of the Tennessee Department of Human Services,[1] and Richard Lyng, Secretary of the United States Department of Agriculture (Secretary), alleging that defendants have refused to

comply with what Lynch contends is the appropriate effective date of section 1504 of the Food Security Act of 1985, Pub.L. No. 99–198, 99 Stat. 1566–67 (1985). Two dispositive motions remain pending in this litigation: (1) Lynch's motion for summary judgment and (2) the Secretary's motion to dismiss the complaint in this action for failing to state a cognizable claim. Both of these motions present the same determinative question of law: Does the Food Security Act of 1985 require the Secretary to make regulations implementing section 1504 retroactively effective to December 23, 1985—the date on which the Act was enacted and the "general effective date" provided for by section 1801 of the Act? For the reasons set forth below, the Court holds that it does not.

I. *Factual and Statutory Background*

The Food Security Act of 1985 was approved by President Reagan and enacted into law on December 23, 1985. The entire Act consisted of eighteen separate Titles and over 250 substantive provisions. Title XV of the Act, Pub.L. No. 99–198, §§ 1501–1589, included numerous nondiscretionary amendments to the federal food stamp program.

The federal food stamp program was established by Congress in 1964 to alleviate hunger and malnutrition among the Nation's low-income households. *See* 7 U.S.C. § 2011 (Supp.1987). Under current Department of Agriculture regulations, persons who are considered "disabled" are entitled to have certain expenses for medical and housing costs deducted from their income for the purpose of determining the amount of food stamp benefits they are entitled to receive each month. *Id.* at § 2014(e); 51 Fed.Reg. 18744, 18745 (May 21, 1986). Prior to the enactment of the Food Security Act of 1985, however, individuals like Lynch, who receive federal disability retirement benefits because of a disability considered permanent under section 221(i) of the Social Security Act, were not considered "disabled" for purposes of the food

---

1. On July 20, 1987, the Court approved a consent decree which effectively resolved Lynch's claims against defendant Min. Pursuant to the consent decree, Min agreed to take no position with respect to the issue presented and addressed in this Memorandum.

stamp program. *See* 51 Fed.Reg. at 18745. Section 1504 of the Food Security Act broadened the definition of "disabled" under the food stamp program to include such individuals. *See* 7 U.S.C. § 2012(r)(3) (Supp.1987); 99 Stat. 1567.

Section 1801 of the Act established a "general effective date." It provided:

*Except as otherwise provided in this Act,* this Act and the amendments made by this Act *shall become effective on the date of the enactment* of this Act.

99 Stat. 1660 (emphasis added).[2] Several sections of the Act, including a number of provisions in Title XV, contained their own effective dates. *See, e.g.,* Pub.L. No. 99–198, §§ 1511, 1531. Section 1504, however, did not contain such a section-specific effective date.

Although Title XV of the Act included a number of provisions with their own section-specific effective dates, it also included its own implementation provision. Section 1583 provided:

*Not later than April 1, 1987* the Secretary shall issue rules *to carry out* the amendments made by [Title XV].

99 Stat. 1595 (emphasis added). In accordance with section 1583, the Secretary promulgated a final agency rule on May 21, 1986 which implemented a number of the food stamp amendments mandated by Title XV. *See* 51 Fed.Reg. 18744. The rule expressly provided that the changes required by section 1504 were to become effective on June 20, 1986. *Id.* at 18749. The rule further provided that the changes were to be implemented "no earlier than the effective date ... and no later than August 1, 1986." *Id.*

On September 18, 1986, the Tennessee Department of Human Services issued a bulletin notifying local human service offices of the changes made by the Act in the food stamp program. The bulletin instructed the local offices that "[b]eginning August 1, 1986, all policy changes contained in this bulletin must be implemented at applications, recertifications, or as cases are reviewed for any purpose." In December, 1986, after receiving an inquiry from Lynch's attorney, the Department of Human Services acknowledged that Lynch was "disabled" for purposes of the food stamp program, increased her monthly allotment of food stamp benefits to account for her newly-acquired "disabled" status, and agreed to make the increase retroactive to August, 1986. The Department of Human Services, however, refused to award Lynch additional food stamp benefits retroactive to December 23, 1985. This lawsuit followed.

## II. *Legal Discussion*

As stated at the outset of this Memorandum, the determinative question presented by the parties' respective motions is whether the Secretary *must* make regulations implementing section 1504 of the Act retroactively effective to December 23, 1985. Lynch contends that, pursuant to section 1801 of the Act, the amendments made by section 1504 became effective immediately on December 23, 1985, and that the Secretary violated federal law by promulgating implementing regulations which disregarded that effective date. According to Lynch, section 1583 "simply establishe[d] a deadline for the issuance of rules." The Secretary, on the other hand, insists that section 1504 was never intended to be "self-executing." Rather, the Secretary contends that the amendments made by section 1504 did not become effective until June 20, 1986, the date on which the Secretary's implementing regulations became effective. Both Lynch and the Secretary maintain that their positions are supported by the express language and legislative history of the Act, as well as relevant case law.

### A. *Relevant Case law*

To date, only two federal courts have had occasion to address the question presented

---

2. Lynch contends that the legislative history of the Act indicates that the "[e]xcept as otherwise provided" language in section 1801 refers to the various section-specific effective dates scattered throughout the Act, not section 1583. The Secretary's interpretation of section 1583, however, is not at odds with that proposition. Whether a section's effective date is determined by reference to section 1801 or to a section-specific effective date provision, section 1583 makes that effective date subject to implementation by the Secretary in the context of Title XV. *See infra* at 501 n. 4.

by this case.[3] In light of the relatively inconclusive nature of the Act's statutory language and legislative history, and the inherent difficulty in attempting to define congressional intent, it is not at all surprising that these courts have reached different conclusions. In *Phillips v. Lyng*, No. 86–1028C, slip op. (W.D.N.Y. July 16, 1987), *aff'd*, No. 87–6226, slip op. (2d Cir. March 22, 1988), the district court was persuaded by the Secretary's argument. Noting that section 1583 "explicitly gave the Secretary until April 1, 1987 to promulgate regulations *to carry out*" the food stamp amendments mandated by Title XV, the court rejected the plaintiff's claim that the amendments were "self-executing." *Id.* at 10 (emphasis added). Instead, because the court found that "the food stamp program relies on the Secretary to provide for the Act's orderly implementation," the court held that the food stamp amendments "did not have the force of law until ... the date the Secretary's rules ... became effective." *id.*, 88–065592.

The district court in *Metzer v. Lyng*, —— F.Supp. ——, No. 6–86–932, slip op. (D.Minn. July 26, 1987) found the Secretary's argument less compelling. In rejecting the Secretary's interpretation of the Act, the *Metzer* court stated:

> The Secretary's interpretation of [section 1583] was incorrect. Congress' decision to allow the Secretary until April 1, 1987 to issue rules was not intended to give the Secretary the power to ignore the effective date of the statute. To so conclude would render the effective date established by Section 1801 irrelevant surplusage.... Instead, both [section 1583 and section 1801] should be given effect by making regulations, whenever ultimately issued, effective retroactively to the effective date provided by the statute.[4]

*Id.* at 13–14. In reaching this conclusion, the *Metzer* court was particularly impressed by two additional factors. First, the court concluded that the Secretary's interpretation of section 1583 would, in addition to rendering section 1801 superfluous, effectively emasculate the section-specific effective dates in Title XV. *Id.* at 13 n. 6.[5] Second, the Court speculated that had Congress intended to make a particular food stamp amendment effective only when the Secretary implemented regulations, it would have done so explicitly, as it did in the Food Stamp Act of 1977. *Id.* at 14.[6]

---

3. Although neither of these cases specifically involved section 1504, both concerned provisions in Title XV of the Act which, like section 1504, did not contain a section-specific effective date. The reasoning of these cases, therefore, is applicable to the present case.

4. The Court disagrees with the *Metzer* court's conclusion that the Secretary's interpretation "would render ... [s]ection 1801 irrelevant surplusage." *Metzer*, No. 6–86–932 at 13. Section 1801, unlike section 1583, applies with equal force to all seventeen Titles of the Act, including Title XV. The Secretary's interpretation simply recognizes that section 1583 made the effective date established by section 1801 subject to implementation in the Title XV context. Section 1801 remains fully applicable to sixteen Titles of the Act.

5. In fact, although the Secretary maintains that the amendments made by Title XV are not "self-executing," he consistently has respected the section-specific effective dates included in Title XV. Although the Secretary's application of section 1583 may arguably be inconsistent, the Court cannot say that it is unreasonable in light of the purposes of Title XV's amendments. *See Compton v. Tennessee Department of Public Welfare*, 532 F.2d 561, 564 (6th Cir.1976).

6. In the Food Stamp Act of 1977, Pub.L. No. 95–113, 91 Stat. 958 (1977), Congress directed the Secretary to implement the Act "as expeditiously as possible consistent with efficient and effective administration." 91 Stat. 979. Congress, however, also provided that the provisions of the Food Stamp Act of 1964 would remain in effect until new implementing regulations were issued. *Id.* Although Congress could have included a similar savings provision in the Food Security Act of 1985, its failure to do so does not necessarily mean that it intended to require the Secretary to make regulations implementing the food stamp amendments mandated by Title XV of the Act retroactively effective. The Court agrees with the Secretary that Congress' failure to include such a provision "is simply a recognition by Congress that [such a provision] is surplusage in the face of a separate implementation provision." Memorandum in Support of Federal Defendant's Motion to Dismiss the Complaint at 13 n. 9.

Lynch makes a similar argument with respect to the food stamp amendments made by the Omnibus Budget Reconciliation Act of 1981 (OBRA), Pub.L. No. 97–35, 95 Stat. 357 (1981). In the OBRA, Congress provided that the food stamp amendments made by the Act "shall be

### B. *Legislative History*

As is commonplace with most federal legislation, the Food Security Act of 1985 was a product of congressional compromise. The House–Senate Conference Committee Report clearly indicates that sections 1583 and 1801 were no exception. *See* H.Conf.Rep. No. 447, 99th Cong., 1st Sess. at 561–62, *reprinted in*, 1985 U.S. Code Cong. & Admin. News 2251, 2487–88. The original Senate version of the Act included both a general effective date provision, which was identical to section 1801, and several section-specific effective dates. The House version, on the other hand, did not contain a general effective date but, like the Senate version, did contain several section-specific effective dates. More significantly, however, the Senate version, unlike the House version, contained a provision which required the Secretary:

> to prescribe interim regulations ensuring that the provisions dealing with food stamps ... are implemented as soon as practicable after enactment, but in no event later than March 1, 1986. ...

*Id.* at 562. This same provision required that "[a]ny change in the interim regulations made in final regulations would be effective on the date(s) prescribed by the Secretary." *Id.*

The House–Senate Conference Committee adopted the Senate's version of the Act to the extent that it included a general effective date provision identical to section 1801. *Id.* The Conference Committee, however, chose not to adopt the interim regulation provision proposed by the Senate. Instead, the Conference Committee adopted an alternative provision which, like section 1583, required the Secretary to promulgate final regulations implementing the food stamp amendments made by the Act no later than April 1, 1987. *Id.* According to the Conference Committee, it intended "to allow the Secretary to imple-

ment the law consistent with orderly implementation." *Id.*

### C. *Analysis*

After carefully considering the express language and legislative history of the Act, the relevant case law, and the general purpose and administrative scheme of the food stamp program, the Court is unconvinced that Congress intended to require the Secretary to make regulations implementing section 1504 retroactively effective to December 23, 1985. As noted in *Levesque v. Block*, 723 F.2d 175 (1st Cir.1983), the food stamp program "has never been self-executing." 723 F.2d at 183. Instead, the food stamp program has, from its inception, been "dependent, practically if not legally, on regulations for its administration." *Id.* at 183 n. 4.[7] If Congress had intended to deviate from this traditional administrative scheme and, in effect, make the food stamp amendments mandated by Title XV "self-executing," it clearly would have done so in a more explicit and unambiguous manner.

Furthermore, although statutory provisions generally become legally binding on their stated effective dates, "legal effectiveness can be made subject to implementing regulations." *Id.* at 186. In the present case, the legislative history relating to sections 1801 and 1583 clearly suggests that Congress understood that the amendments mandated by Title XV of the Act would not become "legally effective" until they were "implemented" by the Secretary. As noted earlier, the original Senate version of the Act provided for the promulgation of interim regulations to ensure that the amendments mandated by Title XV were "implemented as soon as practicable." If, as Lynch argues, the Senate had intended to require the Secretary to make regulations implementing the amendments retroactively effective to their respective statutory effective dates, the

---

effective and implemented upon such dates as the Secretary ... may prescribe, taking into account the need for orderly implementation." Pub.L. No. 97–35 at § 117, 95 Stat. 366. Again, where a separate implementation provision requires the issuance of implementing regulations by a certain date, such language is unnecessary.

7. As the *Levesque* court noted, "[f]rom the program's inception, the Secretary has issued rather detailed regulations regarding all aspects of the program." *Levesque,* 723 F.2d at 183.

Senate's perceived need for interim regulations would have been illusory and unwarranted.

Although the Conference Committee ultimately rejected the Senate's interim regulation proposal, it shared the Senate's concern for orderly and expeditious implementation of the amendments made by Title XV. In an effort to "allow the Secretary to implement [Title XV] consistent with orderly implementation," the Conference Committee adopted an alternative provision —section 1583—which directed the Secretary "to carry out" the amendments made by Title XV by April 1, 1987. The fact that Congress afforded the Secretary over thirteen months to give practical effect to Title XV's food stamp amendments itself suggests that Congress did not intend the amendments to be "self-executing." *Id.* at 186 n. 6 ("a long period of time for implementation is inconsistent with the notion that the law would be self-executing").

For the above reasons,[8] the Court concludes that the Food Security Act of 1985 does not *require* the Secretary to make regulations implementing section 1504 retroactively effective to the "general effective date" established by section 1801. The Secretary's motion to dismiss Lynch's complaint, therefore, is granted.

---

**8.** The Court also notes that the food stamp program is not designed to remedy the effects of *past* hunger, but "to meet a *present need* of low-income households." *Klaips v. Bergland,* 715 F.2d 477, 484–85 (10th Cir.1983). Although the Food Stamp Act of 1977, as amended, does require the restoration of wrongfully withheld food stamp benefits both by the courts and state agencies under certain circumstances, *see* 7 U.S.C. §§ 2020(e)(11), 2023(b), "[t]he administrative burdens and uncertain efficacy" of an award of retroactive benefits cannot be ignored. *See Klaips,* 715 F.2d at 485 (holding that the district court did not abuse its discretion by limiting retroactive relief). *See also Stewart v. Butz,* 356 F.Supp. 1345, 1352 (W.D.Ky.1973) (recognizing that issuance of retroactive food stamp benefits may "open up avenues of fraud, such as a potential black market in food stamps").