**Gwendolyn LYNCH, Plaintiff–Appellant,**

v.

**Richard LYNG and Nancy–Ann E. Min, Defendants–Appellees.**

No. 88–5533.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 16, 1989.

Decided April 7, 1989.

Russell J. Overby, argued, Legal Services of Middle Tennessee, Inc., Nashville, Tenn., for plaintiff-appellant.

Jimmy G. Creecy, Dianne Stamey, Asst. Attys. Gen., Office of the Atty. Gen. of Tennessee, Joe B. Brown, James C. Thomason, III, Asst. U.S. Attys., Nashville, Tenn., Sheila Lieber, Richard A. Hertling, Federal Programs Branch, Michael Jay Singer, Jeffrica Jenkins Lee, argued, Dept. of Justice, Civ. Div., Appellate Staff, Washington, D.C., for defendants-appellees.

Before GUY and NORRIS, Circuit Judges, and BELL, District Judge.[*]

[*] Honorable Robert Holmes Bell, United States District Court, Western District of Michigan, sitting by designation.

RALPH B. GUY, Jr., Circuit Judge.

Gwendolyn Lynch brought a class action against the United States Secretary of Agriculture and the Commissioner of the Tennessee Department of Human Services. Lynch claimed that she and members of the class were entitled to the payment of retroactive food stamp benefits for the period between December 23, 1985, and August 1, 1986. The district court hearing Lynch's claim granted the Secretary's motion to dismiss. Lynch timely appealed to this court, and we now reverse.

## I.

Plaintiff, Gwendolyn Lynch, is a food stamp recipient residing in Tennessee. As a result of amendments made to the Food Stamp Act by the Food Security Act of 1985, Lynch became entitled to greater food stamp benefits. The relevant amendment for Lynch's purposes was one expanding the definition of "disability" for purposes of the Food Stamp Act.

The Food Security Act of 1985 was enacted on December 23, 1985, and on May 21, 1986, Richard Lyng, the Secretary of the United States Department of Agriculture, passed regulations implementing the amendment affecting Lynch. The Secretary's rules made the change in definition effective June 20, 1986, to be implemented by the States between June 20, 1986, and August 1, 1986. On September 18, 1986, the Tennessee Department of Human Services notified local offices of the expanded definition of "disability" and required local offices to implement this change effective August 1, 1986. Since September of 1986, retroactive to August 1, 1986, Lynch has received increased food stamp benefits.

On December 29, 1986, Lynch brought a class action on behalf of herself and all others whose benefits were increased by the disability-expanding amendment. Suing both Richard Lyng and Margarete Sallee, the Commissioner of the Department of Human Services for the State of Tennessee, Lynch alleged that she should have

been awarded increased benefits for the period between enactment of the Food Security Act of 1985, December 23, 1985, and the implementation of these amendments. Nancy–Ann Min subsequently replaced Sallee as Tennessee Commissioner, and has been substituted as a defendant.

Both defendants filed motions to dismiss, while plaintiff filed a motion for class certification and a motion for summary judgment. On July 17, 1987, Lynch and defendant Min entered into a consent decree. The decree provided that the action was certified as a class action, and that Min was to inform affected food stamp households of the change in the definition of "disability." The decree further provided that Min took no position as to plaintiff's claim that benefits should be awarded as of December 23, 1985, but that should December 23, 1985, be found to be the effective date of the amendment, Min will be obligated to make all reasonable efforts to locate and provide retroactive benefits to affected class members.

On April 8, 1988, the district court issued an opinion and order granting Lyng's motion to dismiss. This ruling held that the Secretary was *not* required to make the implementing regulations effective on December 23, 1985, 684 F.Supp. 498. Lynch appeals that decision to this court.

## II.

The sole issue in this case, if not easily resolvable, is at least clearly definable. Plaintiff argues that section 1504 of the Food Security Act of 1985, Pub.L. 99–198, 99 Stat. 1354 (the Act), must be made effective as of the date of enactment, December 23, 1985, while the Secretary argues that he has the authority to delay the effective date of section 1504.

As enacted, the Act contains seventeen titles, each dealing with a somewhat different substantive area. Title XV of the Act amends the Food Stamp Act, 7 U.S.C. § 2011, *et seq.*

The Act contains three provisions relevant to the resolution of the present dispute. Section 1801 of the Act, which is part of no substantive title but refers to the provisions of all titles, holds that: "Except as otherwise provided in this Act, this Act and the amendments made by this Act shall become effective on the date of enactment of this Act." Section 1583 of the Act is part of Title XV, but it makes no changes in the substantive provisions of the Food Stamp Act. Rather, section 1583 provides that: "Not later than April 1, 1987, the Secretary shall issue rules to carry out the amendments made by this title." Section 1504 of the Act is the provision that expands the definition of "disability" under 7 U.S.C. § 2012(r). Persons qualifying as disabled under the Food Stamp Act are granted a deduction from income for medical expenses. Since eligibility for benefits and the amount to which one is entitled depend upon income, the fact that a person qualifies as disabled means that the person is entitled to a reduction in income and a corresponding increase in benefits. Lynch represents all Tennessee residents whose benefits have increased as a result of the new disability definition in section 1504.[1] Unlike some provisions in Title XV, section 1504 does not contain a specific effective date.

Plaintiff argues that section 1801 requires that the Secretary, in implementing 1504 under 1583, provide an effective date for section 1504 of December 23, 1985. Obviously, establishment of such an effective date would require payment of retroactive food stamp benefits for the period between December 23, 1985, and the actual date of implementation. The Secretary argues that section 1504 need not be made effective until implemented under section 1583, and section 1583 requires only that the Secretary implement section 1504 by April 1, 1987.

## III.

### A. Statutory Construction Favors Plaintiff's Position

The most basic tenet of statutory construction holds that courts are required,

---

1. In Lynch's individual case, the amount of monthly benefits to which she is entitled increased from $13.00 to $30.00.

where possible, to give words their plain, unambiguous meaning. *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); *McBarron v. S & T Industries, Inc.*, 771 F.2d 94 (6th Cir.1985). The presumption in construing a statute is that Congress meant exactly what it said. *United States v. Jones*, 542 F.2d 661 (6th Cir.1976). Given this rule, we find it difficult to harmonize section 1801 and section 1583 under the Secretary's proposed interpretation.

Section 1801 clearly and unambiguously states that, except where otherwise indicated, the amendments contained in the Act, like section 1504, are to become effective on the date of enactment—December 23, 1985. Section 1583 gives the Secretary until April 1, 1987, to implement these new rules, but it nowhere indicates the amendments are to be given an effective date other than that suggested by section 1801. The regular meaning of the words used seems to support plaintiff's interpretation.

The Secretary's interpretation requires a deviation from this plain meaning. While the district court is correct in noting that the Secretary's interpretation does not turn section 1801 into "mere surplusage," as section 1801 is still deemed applicable to most titles, Lyng's construction seemingly requires that the rule in 1801 not be applied to the provisions of Title XV. We cannot adopt such a construction, as nothing in section 1801 or Title XV even remotely suggests section 1801's mandate was intended to apply to all titles *except* Title XV. Section 1583 nowhere mentions effective dates, so it cannot be "otherwise indicating" an effective date under section 1801.

We recognize that there is nothing magical about an act's having an effective date, as all legislative enactments must necessarily have dates upon which they become effective, either by express provision or by operation of law. Given the basic purposes of the amendments in Title XV, however, we think it likely Congress intended its statutory effective dates, set by section 1801, to require an immediate change in the calculation of benefits. In each provision of Title XV, Congress recognized that some

aspect of the food stamp program was not functioning properly; inequities were being created. These improprieties were not problems Congress saw developing in the future, but they were malfunctions that needed immediate repair. By passing the Act and explicitly saying its provisions were to take effect at once, unless otherwise specified, Congress declared that no longer would benefits be calculated in an inequitable manner. Section 1504's specific concern was the modification of a system that penalized some persons who were forced to spend large portions of their limited income on medical expenses.

Both the district court and the Secretary seem to suggest that this call for immediate reformation is inconsistent with section 1583's grant of implementation authority to the Secretary, but we disagree. We do not dispute that "legal effectiveness can be made subject to implementing regulations," *Lynch v. Min*, 684 F.Supp. 498, 502 (M.D. Tenn.1988), *quoting Levesque v. Block*, 723 F.2d 175, 186 (1st Cir.1983), but legal effectiveness is not made subject to the Secretary's power every time a provision is not self-executing. In the present case, it is reasonable to assume Congress wanted its changes to take immediate effect, but it recognized that the food stamp distribution system is a complex, multi-leveled bureaucracy. Implementing changes requires time and care, so Congress granted the Secretary time to implement the changes in an orderly manner.

The Secretary's argument, that in addition to time for implementation he was also given the power to determine the effective dates, proves too much. If such were the case, the Secretary could have waited until April 1, 1987, to issue implementing regulations, and then given the states even greater time to enforce the Secretary's new regulations. By thus postponing the effective date for an extended period, the Secretary seemingly has almost unbridled authority to thwart the remedial intent of Congress. While the Secretary argues that he would never set an effective date later than April 1, 1987, his interpretation apparently gives him power to set an even later effective date if he so chooses. The Secretary's

interpretation would result in at least the possibility of clearly inappropriate results being obtained.

### B. Plaintiff Supported by Non-statutory Factors

### 1. Legislative History

Quite apart from the wording and structure of the statute, a number of other factors point to the correctness of the plaintiff's position. One such factor is the legislative history surrounding enactment of the Act. Where the words of a statute are not free from ambiguity, a court may look to relevant legislative history, *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *United States v. Donruss Co.*, 393 U.S. 297, 89 S.Ct. 501, 21 L.Ed.2d 495 (1969); *Henry T. Patterson Trust v. United States*, 729 F.2d 1089 (6th Cir.1984), and the legislative history here seems to support the plaintiff.

There is at least one passage in the legislative history explicitly demonstrating that Congress intended for the amendments to the Food Stamp Act to be effective on December 23, 1985. In discussing differences between House and Senate proposals, the Conference Report notes that: "The Senate amendment makes all amendments provided for in Title XIV [2] (relating [to] food stamps and commodity distribution) effective on enactment except as otherwise provided." H.R.Conf.Rep. No. 447, 99th Cong., 1st Sess. 562, *reprinted in* 1985 U.S.Code Cong. & Admin.News 2488–89. The report then lists the provisions which contain their own effective dates, strongly suggesting that those provisions "otherwise provide." The Conference Committee adopted "the Senate provision with respect to making provisions effective upon enactment unless otherwise specified." *Id.* The passage makes clear both that Congress intended for section 1801's requirement of a date of enactment effective date to apply to Title XV provisions, and that the "otherwise provided" language in section 1801 refers to the individual effective dates contained in some par-

ticular provisions, *not* to the section 1583 requirement that implementation occur by April 1, 1987.

The Secretary, of course, argues that the legislative history actually favors his position, but his only real argument centers on the Senate's attempt to include a provision calling for interim regulations to be given effect during the period between enactment and implementation. The Secretary argues that the Senate's perceived need for interim regulations demonstrates a clear awareness that the amendments would take effect only upon implementation, not upon the date of enactment. More important, argues the Secretary, is the fact that the call for interim regulations is inconsistent with a belief that the amendments will be given retroactive effect. The Secretary claims there would be no need for interim regulations if the beneficiaries were going to receive benefits for the period between enactment and implementation, as would occur with required retroactivity.

We do not find the Secretary's cited legislative history to be persuasive. No one disputes the fact that Congress knew it needed the Secretary to implement the amendments. We disagree with the argument that a call for interim regulations—a call that went unheeded in the final bill—necessarily would be unwarranted if provisions were thought to require retroactive effectiveness. The Senate could quite logically have called for interim regulations to ensure that beneficiaries began regularly receiving some benefits as soon as possible, rather than receiving them in one lump sum after implementation. As discussed above, Congress, in passing the amendments to the Food Stamp Act, was attempting to immediately rectify shortcomings in the system of benefit provision. While the realities of a complex bureaucracy made ample implementation time a necessity, the proposed interim regulations further demonstrate Congress' commitment to adjusting the system at once.

---

**2.** The Senate Bill labeled the amendments to the Food Stamp Act as Title XIV, but these amendments became Title XV in the final Bill.

## 2. The 1977 and 1981 Amendments

Additional support for plaintiff's position is generated by a comparison of the 1985 amendments to those of 1977 and 1981. In both of those cases, Congress made explicit its decision to grant the Secretary authority to set effective dates. In the Food Stamp Act of 1977, Title XIII of Pub.L. No. 95–113, 91 Stat. 913, Congress provided for an effective date of October 1, 1977 (two days after enactment), and granted the Secretary the authority to implement. While this makes the 1977 amendments very similar to the 1985 changes, there is a critical difference—the 1977 Act also contained a provision stating that the old rules remained in effect until implementation. The 1981 amendments contained an analogous "continuity provision." Omnibus Reconciliation Act of 1981, Pub.L. No. 97–35, 95 Stat. 357. Congress would have felt no need for such provisions if, as the Secretary argues in connection with the 1985 amendments, the authority to implement necessarily includes the authority to set post-implementation effective dates. Congress in 1977, 1981, and 1985 seemed to recognize that unless it specified otherwise, the Secretary was bound to honor the statutorily set effective dates when promulgating new regulations to implement the amendments. In 1977 and 1981, Congress granted the Secretary authority to determine when the old rules ceased to control, and in 1985 Congress itself determined the date upon which the new rules were to be given effect.

Congress' decision to include such provisions is highly significant. While the district court and Secretary argue that a provision granting the Secretary authority to set effective dates is mere surplusage in the face of a separate implementation provision, *Lynch,* 684 F.Supp. at 501 n. 6, we disagree. Whenever possible, courts must avoid constructions that render portions of statutes superfluous. *Zimmerman v. North American Signal Co.,* 704 F.2d 347 (7th Cir.1983); *National Insulation Transportation Committee v. Interstate Commerce Commission,* 683 F.2d 533 (D.C.Cir.1982). In 1977 and 1981, Congress clearly demonstrated that when it intends for the Secretary to have the power to set effective dates, that power will be expressly granted.[3]

## 3. Implementation of Other Title XV Provisions

While there is something inherently illogical in the awarding of retroactive food stamps—one who has been denied basic subsistence for one year is not really made whole by being given one year's worth of food in a lump sum at the end of the year—such a procedure is not at all foreign to the food stamp program. Retroactive benefits are frequently paid when benefits are improperly terminated for a period of time. More significantly, Secretary Lyng has given retroactive effect to many of the amendments contained in Title XV of the Act. *See, e.g.,* 51 Fed.Reg. 28,196 (1986) (to be codified at 7 C.F.R. §§ 272.1(g), 273.2(j)); 52 Fed.Reg. 5,434 (Feb. 23, 1987). While we agree with the Secretary that the fact that these amendments were given retroactive effect is not proof that section 1504 must be given retroactive effect, we note these regulations only to demonstrate that giving amendments retroactive effect is

---

**3.** We do not believe that the interpretation suggested by the 1977 and 1981 statutory arrangements is undercut by Congress' more recent amendments to the Food Stamp Act in the Hunger Prevention Act of 1988, Pub.L. No. 100–435, 102 Stat. 1645. In section 701 of the Hunger Prevention Act, Congress determined that, unless otherwise provided for, the Act's amendments would become effective *and* be implemented on October 1, 1988. By making the effective and implementation dates the same, and by setting an effective/implementation date only twelve days after the Act's September 19, 1988, enactment, Congress demanded that its proposed changes quickly take effect, and expressly denied the Secretary any authority to delay legal effectiveness. Because the 1988 amendments contain identical effective and implementation dates, and because subsequent legislative history is a dangerous tool when used to determine the intent of an earlier statute, *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 118 n. 13, 100 S.Ct. 2051, 2061 n. 13, 64 L.Ed.2d 766 (1980), our analysis of the 1985 amendments is unaffected by congressional language, in connection with the 1988 amendments, suggesting that retroactive benefits are necessary only when the Secretary fails to meet the implementation date. S.Rep. No. 397, 100th Cong., 2d Sess. 6 (1988).

neither novel nor an anathema to the basic purposes of the food stamp program.[4] Rather, the Secretary makes benefits retroactive when the demands of fairness require it.

### 4. The Case Law

Both parties spend a great deal of effort arguing that relevant case law supports their position. However, we do not think such an inquiry is fruitful, as the cases are fairly evenly split, they are not binding on this court, and they advance no arguments not also made by the parties. Of the circuit courts that have addressed the question of whether Title XV provisions, silent as to the effective date, must be deemed effective as of the date of enactment, the Eighth Circuit supports the plaintiff's position, *Metzer v. Lyng*, 864 F.2d 75 (8th Cir. 1988), while the Second Circuit affirmed a decision supporting the Secretary's view. *Phillips v. Lyng*, 847 F.2d 835 (2d Cir. 1988). To our knowledge, five district courts have confronted this issue, with three of these courts supporting the Secretary, *Lynch v. Min*, 684 F.Supp. 498 (M.D. Tenn.1988); *Huberman v. Lyng*, No. CIV. 86–9369, slip op., (S.D.N.Y. Sept. 14, 1988); *Phillips v. Lyng*, No. CIV–86–1028C, slip op., (W.D.N.Y. July 16, 1987), 1987 WL 54413, and two adopting plaintiff's argument. *Brooks v. Min.*, No. 86–2577 GA, slip op., (W.D.Tenn. July 5, 1988), 1988 WL 156283, *Metzer v. Lyng*, 687 F.Supp. 454 (D.C.Minn.1987). A Florida state court came down squarely in support of plaintiff's position. *London v. Department of Health & Rehabilitative Services*, 502 So.2d 57 (Fla.1987). Thus, there is no case law compelling this court to support one party over the other.

### 5. Presumption in Favor of the Secretary

Finally, the Secretary argues that, in a close case, courts are required to afford considerable deference to the interpretation of the agency charged with enforcing the statute. *Chemical Manufacturers Ass'n v. Natural Resources Defense Council,* *Inc.,* 470 U.S. 116, 105 S.Ct. 1102, 84 L.Ed. 2d 90 (1985); *Blum v. Bacon,* 457 U.S. 132, 102 S.Ct. 2355, 72 L.Ed.2d 728 (1982). While this principle is undoubtedly sound, this deference merely establishes the framework for judicial analysis; it does not affirmatively resolve the entire dispute. *Security Industry Ass'n v. Board of Governors of Federal Reserve System,* 468 U.S. 137, 104 S.Ct. 2979, 82 L.Ed.2d 107 (1984); *Crounse Corp. v. Interstate Commerce Commission,* 781 F.2d 1176 (6th Cir.), *cert. denied,* 479 U.S. 890, 107 S.Ct. 290, 93 L.Ed.2d 264 (1986). Additionally, the amount of weight accorded an agency interpretation diminishes further when the interpretation does not require special knowledge within the agency's field of technical expertise. *In re Oliver M. Elam, Jr., Co.,* 771 F.2d 174 (6th Cir.1985). There is nothing about the Secretary's expertise in administering the food stamp program that would make him better able to divine congressional intent as to effective dates. Finally, an agency interpretation is entitled to extremely little deference when a court determines that the interpretation contravenes congressional intent, illuminated by express language, legislative history, and overall statutory purpose. *Chemical Manufacturers Ass'n,* 470 U.S. 116, 105 S.Ct. 1102; *Federal Election Commission v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 102 S.Ct. 38, 70 L.Ed. 2d 23 (1981); *Transbrasil S.A. Linhas Aereas v. Department of Transportation,* 791 F.2d 202 (D.C.Cir.1986); *Henry T. Patterson Trust v. United States,* 729 F.2d 1089 (6th Cir.1984). Here, where we find that the language of the statute, the broader purposes, and the legislative history argue against the Secretary's position, we are not compelled to defer to his interpretation.

The decision of the district court granting the Secretary's motion to dismiss is REVERSED, and the case is remanded to the district court for further proceedings.

---

**4.** In fact, Tennessee was unable to implement the Secretary's regulations on a state-wide basis by the August 1 deadline set by the Secretary, so Tennessee was forced to pay retroactive benefits.