**CLARK EQUIPMENT COMPANY, and consolidated subsidiaries, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**No. 89–1926.**

United States Court of Appeals, Sixth Circuit.

Argued May 4, 1990.

Decided Aug. 22, 1990.

David P. Taylor (argued), South Bend, Ind., for plaintiff-appellant.

Seth G. Heald, Trial Atty., Tax Div., Gary R. Allen, Acting Chief, Bruce R. Ellisen (argued), Ann Belanger Durney, U.S. Dept. of Justice, Appellate Section, Tax Div., Washington, D.C., Edith A. Landman, Office of U.S. Atty., Grand Rapids, Mich., for defendant-appellee.

Before GUY and RYAN, Circuit Judges, and ENGEL, Senior Circuit Judge.

RYAN, Circuit Judge.

Plaintiff-appellant, Clark Equipment Company and its subsidiaries, appeals the district court's judgment in favor of defendant in this federal income tax case. The appeal presents the following issues:

1. Whether the district court erred in holding that 26 U.S.C. § 249 prohibited plaintiff's claimed deduction concerning the conversion of CLEO debentures into Clark stock.

2. Whether the district court erred in holding that 26 U.S.C. § 249 applied to the transactions in this case, given the effective date provision of the statute.

We conclude that the district court correctly held that appellant was not entitled to the claimed deduction concerning the conversion of debentures. Section 249 applies to the transactions and bars the deduction. Thus, we affirm the judgment of the district court.

I.

This case was submitted to the district court upon stipulated facts. Clark Equip-

ment Overseas Finance Corporation ("CLEO"), a wholly-owned subsidiary of Clark Equipment Company ("Clark"), issued $15 million of debentures in $1,000 denominations on March 1, 1966. The debentures offered holders the option, from August 1, 1967 to February 29, 1976, to convert the debentures into shares of Clark common stock at a specified conversion rate. The original indenture provided that Clark would effect the conversions. On July 14, 1971, the indenture was amended to provide that CLEO would effect the conversions.

In 1973, the tax year in question, Clark and CLEO filed a consolidated federal income tax return. During that year, holders of debentures with an aggregate face value of $1,447,000 converted their debentures into Clark common stock and cash.[1] CLEO obtained the Clark stock from Clark in order to complete the conversions. The cost of the stock and cash paid to holders of debentures converted in 1973 totaled $1,839,989. On the 1973 tax return, CLEO claimed a deduction of $392,989, the amount by which the cost of conversion exceeded the face amount of the converted debentures, as an ordinary business expense.

The Internal Revenue Service disallowed the deduction and, after Clark and its subsidiaries paid the tax deficiency, disallowed the refund claim. Appellant brought suit against the government under 28 U.S.C. § 1346(a)(1) to recover the taxes and interest paid.

On July 14, 1989, the district court filed an opinion concluding that CLEO was not entitled to the claimed tax deduction. The court held that the "relevant exchange in this case ... is essentially a capital transaction" and that 26 U.S.C. § 249 applied to prohibit the deduction concerning the conversion of the debentures. This appeal followed issuance of the district court's judgment order.

1. Debenture holders converting their debentures received cash in lieu of fractional shares of Clark common stock.

## II.

Appellant argues that 26 U.S.C. § 249 does not bar CLEO's claimed deduction for the "loss" incurred on the conversion of the debentures for two reasons: 1) the provisions of section 249 do not apply to the subject transactions; and 2) even if section 249 does apply to such transactions, it would not bar CLEO's deduction because of the effective date provision of the statute. We address each claim in turn.

### A. *Application of 26 U.S.C. § 249*

Section 249 disallows deductions of certain amounts associated with the repurchase of convertible debentures.

No deduction shall be allowed to the issuing corporation for any premium paid or incurred upon the repurchase of a bond, debenture, note, or certificate or other evidence of indebtedness which is convertible into the stock of the issuing corporation, or a corporation in control of, or controlled by, the issuing corporation, to the extent the repurchase price exceeds an amount equal to the adjusted issue price plus a normal call premium on bonds or other evidences of indebtedness which are not convertible. The preceding sentence shall not apply to the extent that the corporation can demonstrate to the satisfaction of the Secretary that such excess is attributable to the cost of borrowing and is not attributable to the conversion feature.

26 U.S.C. § 249(a).

■ Appellant argues that the district court erred in finding that section 249 precludes appellant's claimed deduction because that section does not apply to the transactions in question. That is so, appellant claims, because section 249 applies only to capital transactions or to taxpayers attempting to avoid capital transactions, and the transactions in question here are neither.[2] Appellant also claims, *inter alia,*

2. Appellant focuses its argument on this "capital transaction" theory, but we note that section 249 nowhere mentions "capital transactions." It is the statutory language, of course, which governs our construction.

that section 249 cannot apply in this case because no "repurchase" occurred and the costs of conversion were attributable to "costs of borrowing." We conclude that no statutory or case law supports appellant's arguments.

■ The language of section 249 identifies five elements that must be present as a condition of the applicability of the statute to transactions of the kind involved in this case:

1) The *issuing corporation* is attempting to claim the deduction;

2) that corporation *paid or incurred a premium* in the conversion transactions;

3) that corporation *repurchased* debentures;

4) the debentures were *convertible into the stock of a corporation in control of the issuing corporation;* and

5) the amount disallowed as a deduction is *attributable to the conversion feature.*

All five elements are present in this case. The first of the five, the "issuing corporation" requirement, is clearly met. CLEO issued the debentures and CLEO claimed the deduction. The fourth requirement, convertibility, is also fulfilled. CLEO issued debentures convertible into Clark common stock and CLEO, a wholly-owned subsidiary of Clark, is under the control of Clark.[3] We discuss the remaining three requirements in greater detail below.

The legislative history, however, refutes appellant's argument by indicating that section 249 was intended to govern these repurchases which are "similar" to capital transactions. "[T]he amount of the premium which is in excess of the cost of borrowing is not analogous to an interest expense or deductible business expense, but rather is similar to an amount paid in a capital transaction." H.R.Rep. No. 413, 91st Cong., 1st Sess. 111, *reprinted in* 1969 U.S.Code Cong. & Admin.News 1645, 1759.

3. *See* 26 U.S.C. §§ 249(b)(2) and 368(c).

4. Appellant attempts to support its argument by analogizing the amount paid in these conversions to the $1,000 that would have been paid to redeem the debentures at maturity, both amounts given in the terms of the debentures.

## 1) Premium Paid or Incurred

■ Appellant argues that the second of the listed requirements for the application of section 249, that the issuing corporation paid or incurred a premium, is not met in this case because, "[u]nder the plain meaning of the word premium, CLEO paid no premium. CLEO delivered only what was required of CLEO under the terms of the debentures." Appellant claims, without legal support, that "[a] premium on the acquisition of a bond or debenture only arises when an additional sum or value is paid over that promised in the instrument."[4] We disagree.

The applicable regulations define "repurchase premium" as "the excess of the repurchase price paid or incurred to repurchase the obligation over its 'adjusted issue price.'" 26 C.F.R. § 1.249–1(c)(1). The key figure is not, as appellant claims, the amount given in the conversion terms of the debenture, but rather is the "adjusted issue price" or, in this case, the face amount of the debenture. *See* 26 C.F.R. § 1.249–1(c)(2).

Appellant paid $1,839,989, in Clark stock and cash, to repurchase converted debentures with a total face amount of $1,447,000. The excess of the first figure over the second, the "repurchase premium" as defined in the regulations, is the amount appellant has claimed as a deductible loss. Contrary to appellant's arguments, that figure, $392,989, represents the "premium paid" as that term is used in section 249.

Appellant claims that "[i]n any situation with alternative means of redemption, any one chosen method of redemption—here conversion—does not create a premium when compared with the other method." Appellant's analogy compares apples with oranges since alternative means of redemption are not involved here. A conversion differs from a redemption. As the Second Circuit has stated, "[t]he convertible debenture is an indivisible unit; the issuer has but one obligation to meet, either redemption *or* conversion. It can never be required to do both." *Chock Full O'Nuts Corp. v. United States,* 453 F.2d 300, 305 (2d Cir.1971). We are not convinced by appellant's attempt to bolster its own definition of "premium."

## 2) "Repurchase" of Debentures

■ Appellant argues that the third requirement as we have listed them, that the issuing corporation repurchased the debentures, is unmet because the conversions in this case did not involve a "repurchase." Appellant claims that "merger and cancellation [of debt instruments] must be held to be an essential element of any definition of repurchase" and that a "repurchase" requires an exchange for cash. The district court disagreed, noting that "[t]he word 'repurchase' is used broadly to cover the rendering of money or, as is a common method of disposal, the conversion of the bond or debenture into stock."

We too disagree with appellant's understanding of the meaning of the term "repurchase" in section 249. "The most basic tenet of statutory construction holds that courts are required, where possible, to give words their plain, unambiguous meaning." *Lynch v. Lyng*, 872 F.2d 718, 720–21 (6th Cir.1989). The Supreme Court recently relied upon a dictionary definition when determining the common meaning of a statutory term,[5] and we find the dictionary helpful in this situation as well. "Repurchase" means to "regain by purchase" and "purchase" means "to acquire by the payment of money or its equivalent." Random House Dictionary of the English Language 1166, 1218 (1981).

In this case, CLEO issued the convertible debentures and then CLEO effected the conversions by paying money or its equivalent, shares of Clark stock, to the debenture holders to acquire the debentures. We hold that the plain meaning of the term "repurchase" includes those transactions by CLEO.

### 3) Amount Attributable to Conversion Feature

■ The fifth element of section 249, as we have listed them, is that the disallowance of a deduction for a premium paid on the repurchase of convertible debentures does not apply "to the extent that the corporation can demonstrate to the satisfac-

tion of the Secretary that such excess *is attributable to the cost of borrowing and is not attributable to the conversion feature.*" 26 U.S.C. § 249(a) (emphasis added). Thus, for section 249 to bar CLEO's deduction, the premium must be attributable to the conversion feature of the debentures.

Appellant argues that the amount CLEO claimed as a deduction is attributable to the cost of borrowing and, therefore, the deduction is not prohibited by section 249. According to appellant, "the key is always whether or not the taxpayer is issuing its equity. If the taxpayer is not issuing its equity, all costs associated with bonds or debentures are costs of borrowing.... [C]onversion costs are the costs of borrowing when the conversion is into the equity of another party." We think appellant's unsupported statements contradict established legal principles.

The Second Circuit, in a case examining amortized bond discount, differentiated costs of borrowing from amounts attributable to the conversion feature of convertible debentures.

> [T]he taxpayer has failed to satisfy its burden of showing that the amount of the issue price allocable to the conversion feature represents a cost of borrowing money that must without qualification be paid. Its inability to meet this condition arises from the fact that the debentures provide for two mutually exclusive modes of satisfaction. Under one the holder may exercise his right to convert the debenture into common stock, in which event he will surrender his debenture and it will not be redeemed or paid at maturity. To permit deduction of the amount attributable to the conversion feature in the face of such a possibility would be to disregard established conditions precedent to the allowance of discount as a cost of borrowing money which must be repaid.

*Chock Full O'Nuts Corp.*, 453 F.2d at 304.

The Seventh Circuit addressed a situation similar to this case in *National Can*

---

**5.** *See Mallard v. United States Dist. Court*, 490 U.S. 296, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989).

*Corp. v. United States*, 687 F.2d 1107 (7th Cir.1982). A wholly-owned subsidiary issued debentures convertible into common stock of the parent corporation, and some debenture holders chose to convert their debentures. As in this case, the parent corporation and its affiliated corporations filed a consolidated federal income tax return. The *parent* corporation effected the conversions and "treated the excess ... of the market value of the [parent corporation's] common stock over the face amount of the debentures as a premium paid for the acquisition of the [subsidiary's] debentures." *Id.* at 1110. The parent corporation amortized that amount over the remaining life of the debentures, but the Internal Revenue Service disallowed the amortization deductions.

In considering the parent corporation's suit for recovery of the additional taxes paid, the Seventh Circuit held that the amount described above was not amortizable bond premium under 26 U.S.C. § 171, but rather was a premium attributable to the conversion feature. Section 171 distinguishes premium attributable to the costs of borrowing from that attributable to a conversion feature and the court discussed the "complementary" provisions of 26 U.S.C. § 249.[6]

> Section [249] again illustrates the line Congress has consistently drawn between bond premium attributable to the interest cost of borrowing and bond premium attributable to a conversion privilege. As Congress reasoned in passing Section 249, premium due to a conversion feature is "not analogous to an interest expense or deductible business expense, but rather is similar to an amount paid in a capital transaction. In effect, the corporation is repurchasing the right to convert the bonds into its common stock, much as it might purchase its stock." H.R.Rep. No. 413, 91st Cong, 1st Sess. 111, reprinted in 1969 U.S.Code Cong. &

Ad.News 1645, 1759–1760; see also *Chock Full O'Nuts Corp. v. United States*, 453 F.2d 300, 306 n. 19 (2d Cir. 1971). Here [the parent corporation's] transaction did not merely remove from the market the right to enter into a future capital transaction—the evil for which Section 249 disallows any deduction—but involved a present substitution of capital-stock liability for its subsidiary's bonded indebtedness. See Cary, *supra*, 74 Harv.L.Rev. at 497. Thus the Congressional purpose of disallowing deductions for premiums attributable to essentially capital transactions encompasses the transactions here.

687 F.2d at 1115–16.

As in *National Can*, the premium claimed by CLEO as a deductible loss is attributable to the conversion feature of the bonds. In effect, CLEO repurchased the right to convert the bonds into stock. Thus, we find that the five elements required by section 249's disallowance provisions are present in the instant case. The district court correctly held that section 249 applies to the transactions and bars the deduction claimed by CLEO.

### B. *Effective Date Provision*

■ Appellant claims that section 249 does not apply to the instant conversion transactions because of the effective date provision of the statute. Appellant argues that CLEO was subject to a binding obligation to repurchase the debentures prior to April 22, 1969 and thus falls within the exception language of the statute. We disagree.

The effective date provision of section 249 was set forth in section 414(c) of the Tax Reform Act of 1969, Pub.L. No. 91–172, 83 Stat. 487. That provision, as restated in the Code of Federal Regulations, provides, in relevant part:

> Under section 414(c) of the Tax Reform Act of 1969, the provisions of section 249

---

**6.** As we discussed earlier and as the Seventh Circuit recognized, section 249 prohibits a deduction to the *issuer* of the debentures. *See* 26 U.S.C. § 249; 687 F.2d at 1115 n. 5. In *National Can*, the parent corporation effected the conversions of debentures issued by its subsidiary into

the parent's common stock. Thus, *National Can* involved a non-issuer claiming the deduction. The instant case, however, fits squarely within the terms of section 249 since the issuer (CLEO) claimed the deduction.

and this section shall apply to any repurchase of a convertible obligation occurring after April 22, 1969, *other than a convertible obligation repurchased pursuant to a binding obligation incurred on or before April 22, 1969,* to repurchase such convertible obligation at a specified call premium.

26 C.F.R. § 1.249–1(f)(1) (emphasis added).

CLEO issued the debentures on March 1, 1966. Clark was obligated to convert the debentures, but "on or after 1 September 1970, CLEO could, at its option, redeem the debentures." Stipulation ¶ 7. The amendment to the indenture providing for CLEO to effect the conversions rather than Clark became effective on July 14, 1971. *See id.* at ¶ 12. CLEO did not incur a binding obligation to convert the debentures until 1971, well after the effective date of section 249. Thus, the district court correctly held that section 249 applied to CLEO when considering the effective date provision.

### III.

For the reasons stated, we AFFIRM the judgment order of the district court.